UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | Misc. No.: 22-mc-320-VEC<br><br>**YEEZY, LLC AND YEEZY MARKETING, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A.    The Court lacks inherent equitable authority to issue an order of attachment. ...... 2

    B.    The statutory requirement to move for confirmation of the attachment order within five days applies in this Court. .................................................................. 4

    C.    Under JAMS rules, the arbitration did not commence until more than thirty days after the attachment order. ..................................................................................... 6

    D.    adidas still has not shown that an arbitration award in its favor may be rendered ineffectual without provisional relief. ...................................................................... 7

    E.    There is no legal basis on which the Court can leave the attachment order in effect while adidas seeks a new one. ....................................................................... 10

III. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Dohan v. Kouyoumjian,*
    451 N.Y.S.2d 367, 114 Misc.2d 170 (Sup. Ct. N.Y. Cty. 1982) ...............................................6

*Alpha Petroleum Trading Co. v. Richards,*
    No. 85 Civ. 8553 (CSH), 1986 WL 3515 (S.D.N.Y. Mar. 16, 1986) ........................................5

*B. Riley FBR, Inc. v. Clarke,*
    Case No. 18-cv-2318, 2018 WL 7253601 (D. Minn. Nov. 21, 2018) ......................................3

*Belgian American Mercantile Corp. v. De Groeve-Marcotte and Fils,*
    433 F.Supp. 1098 (S.D.N.Y. 1977) ..........................................................................................5

*BMaddox Enters. LLC v. Oskouie,*
    No. 17-CV-1889 (RA), 2017 WL 4797906 (S.D.N.Y. Oct. 23, 2017) .................................8, 9

*Buckley v. McAteer,*
    210 A.D.3d 1044, 179 N.Y.S.3d 329 (2d Dep't 2022) .............................................................3

*Carroll v. Manufacturers Trust Co.,*
    202 F.2d 714 (2d Cir. 1953) ......................................................................................................5

*Dong v. Miller,*
    16-CV-5836 (NGG) (JO), 2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018) ................................3

*In re Frigitemp Corp.,*
    34 B.R. 1000 (S.D.N.Y. 1983) ..................................................................................................8

*Gamma v. Ferrara,*
    274 A.D.2d 479, 711 N.Y.S.2d 462 (2d Dep't 2000) ...............................................................8

*Grafstein v. Schwartz,*
    100 A.D.3d 699, 953 N.Y.S.2d 681 (2d Dep't 2012) ...............................................................7

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999) ..................................................................................................................4

*Gucci America, Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014) ......................................................................................................2

*Haggiag v. Brown,*
    728 F.Supp. 286 (S.D.N.Y. 1990) ............................................................................................3

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
   43 F.4th 263 (2d Cir. 2002) ...................................................................................................5

*Kraemer v. Williams*,
   131 A.D. 236, 115 N.Y.S. 721 (2d Dep't 1909) ...................................................................4

*In re M.B. Int'l W.W.L.*,
   No. 12 Civ. 4945(DLC), 2012 WL 3195761 (S.D.N.Y. Aug. 6, 2012)...................................4

*Mermaid Marine, Ltd. v. Maritime Capital Mgmt. Partners, Ltd.*,
   147 A.D.3d 498, 46 N.Y.S.3d 780 (1st Dep't 2017) ............................................................8

*Mischon de Reya New York LLP v. Grail Semiconductor, Inc.*,
   No. 11-cv-04971(RJH), 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) ............................2, 6

*Philatelic Found. v. Kaplan*,
   No. 85 Civ. 8571 (RWS), 1986 WL 5629 (S.D.N.Y. May 9, 1986), *abrogated
   on other grounds by Aramony v. United Way of America*, 969 F.Supp. 226
   (S.D.N.Y. 1997) ......................................................................................................................4

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*,
   144 F.Supp.2d 241 (S.D.N.Y. 2001).....................................................................................3

*U.S. ex rel. Rahman v. Oncology Assocs.*,
   198 F.3d 489 (4th Cir. 1999) ................................................................................................3

*Security Pacific Nat'l Bank v. Nyland (CF8) Ltd.*,
   No. 91 CIV. 2647 (PNL), 1991 WL 267768 .......................................................................3

*Sengstacken v. Zoning Bd. of Appeals of Town of Ramapo*,
   87 A.D.2d 651, 448 N.Y.S.2d 521 (2d Dep't 1982) .............................................................6

*Serio v. Black, Davis & Shue Agency, Inc.*,
   No. 05 Civ. 15(MHD), 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005)..................................3

*Shamrock Power Sales, LLC v. Scherer*,
   Case No. 12-CV-8959 (KMK) (JCM), 2016 WL 6102370 (S.D.N.Y. Oct. 18,
   2016) .......................................................................................................................................3

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
   No. 16-cv-6805 (JSR), 2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) ......................................2

*Thadford Realty Co. v. L.V. Income Properties Corp.*,
   101 A.D.2d 814, 476 N.Y.S.2d 346 (2d Dep't 1984)............................................................6

*Thea v. Kleinhandler*,
   807 F.3d 492 (2d Cir. 2015)...................................................................................................5

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.*,
 131 F.Supp.2d 341 (N.D.N.Y. 2001) .................................................................................3

**Statutes and Rules**

Fed. R. Civ. P. 6(b) ..................................................................................................5, 6

Fed. R. Civ. P. 64 ................................................................................................ *passim*

NYCPLR 2004 ................................................................................................................6

NYCPLR 6201 ................................................................................................................4

NYCPLR 6211(b) .................................................................................................5, 6, 10

NYCPLR 6212(a) ......................................................................................................1, 8

NYCPLR 6223(a) ........................................................................................................10

NYCPLR 7502(c) .........................................................................................6, 7, 8, 10

**Other Authorities**

6 Am. Jur. 2d Attachment and Garnishment § 12 .........................................................4

N.Y. Jur. 2d Creditors' Rights § 22 ................................................................................4

## I.  INTRODUCTION

American poet Carl Sandburg famously said, "If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell." In its response to Yeezy's motion to vacate the attachment order, adidas engages in a lot of table-pounding. A large portion of adidas's response is devoted to arguing the merits of its underlying claims, rather than addressing the issues raised in the instant motion. (*See* Pet. Resp. at 2-8, 10, 11-12, 20-21.) While a probability of success on the merits is one of the elements that adidas must show to support attachment, *see* NYCPLR 6212(a), Yeezy did not contend in its motion that adidas had failed to satisfy that element. That is not to say, of course, that Yeezy *concedes* the merits of adidas's claims—to the contrary, Yeezy vigorously disputes adidas's one-sided narrative, which omits vast swaths of context that paint a very different picture and establish that it is *adidas* that is liable to *Yeezy*, and not the other way around. But the proper forum for the resolution of that dispute is the pending arbitration proceeding—not this Court. adidas's attacks on Ye and Yeezy are nothing more than a transparent effort to improperly bias the Court against them and are irrelevant to the issues presented by this motion. Yeezy trusts that the Court will disregard adidas's *ad hominem* attacks.

When it comes to the actual issues presented by this motion, both the law and the facts are against adidas. Unable to dispute its procedural defaults, adidas argues that the Court can simply disregard the requirements of New York's attachment statute and base the attachment order on its own inherent equitable authority. But adidas's argument conflates the distinct provisional remedies of preliminary injunction and attachment—the former of which is grounded in the Court's equitable power, but the latter of which is strictly a creature of state law as adopted by Fed. R. Civ. P. 64. Nor can the Court disregard the five-day requirement to bring a

1

confirmation motion as merely "procedural"—Rule 64 *incorporates* state procedures with respect to the remedy of attachment, and in any event, the five-day rule is a *substantive* part of the New York attachment statute. adidas's insistence that it filed its arbitration demand within thirty days also gets adidas nowhere—JAMS rules are explicit that an arbitration with that organization does not commence until it issues a commencement letter. Finally, adidas's belated attempt to show that an arbitral award in its favor may be rendered ineffectual because Yeezy is in danger of insolvency is based on nothing more than speculation and innuendo. And in response to that unpersuasive and inadmissible evidence, Yeezy has submitted admissible evidence establishing its solvency. The law and the facts are clear—because of adidas's procedural defaults and substantive shortcomings, the attachment order must be vacated.

## II.     ARGUMENT

### A. The Court lacks inherent equitable authority to issue an order of attachment.

Realizing that it cannot avoid the conclusion that its procedural defaults have rendered the attachment order void under New York law, adidas urges this Court to ignore New York law altogether, and instead sustain the attachment order based on its own inherent equitable authority, independent of New York law. (Pet. Resp. at 15-17.) But none of the authorities adidas cites supports the existence of a federal court's inherent equitable authority to issue an ***order of attachment***. Rather, with one exception[1], each of those cases involved a ***preliminary injunction*** freezing a defendant's assets during the pendency of the litigation. *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *Shaoxing Bon Textiles Co. v. 4-U Performance*

---

[1] The sole exception is *Mischon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11-cv-04971(RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011), but that case undermines, rather than supports, adidas's position. There, the Court acknowledged that "Rule 64 of the Federal Rules of Civil Procedure dictates that *state law* governs the availability of the provisional remedy of attachment in this Court." *Id.* (emphasis added). Nowhere did the Court remotely suggest that it had inherent equitable authority, independent of New York law, to issue an attachment order.

*Grp. LLC*, No. 16-cv-6805 (JSR), 2017 WL 737315, at *4 (S.D.N.Y. Feb. 6, 2017); *Shamrock Power Sales, LLC v. Scherer*, Case No. 12-CV-8959 (KMK) (JCM), 2016 WL 6102370, at *2 (S.D.N.Y. Oct. 18, 2016); *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15(MHD), 2005 WL 3642217, at *6 (S.D.N.Y. Dec. 30, 2005) (noting that "plaintiff has eschewed [the] remedy [of attachment], and instead pursues injunctive relief under Fed. R. Civ. P. 65") (footnote omitted); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F.Supp.2d 241, 242 (S.D.N.Y. 2001); *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 492 (4th Cir. 1999); *Dong v. Miller*, 16-CV-5836 (NGG) (JO), 2018 WL 1445573, at *7 (E.D.N.Y. Mar. 23, 2018); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F.Supp.2d 341, 346, 349-50 (N.D.N.Y. 2001) (acknowledging that "New York Law governs any order of attachment issued by this court[,]" and analyzing availability of preliminary injunctive relief *after* determining that attachment was not an available remedy under New York law).

The difference between an attachment order and a preliminary injunction is neither merely semantic nor trivial. Rather, the two are distinct remedies governed by different standards. *See, e.g.*, *Buckley v. McAteer*, 210 A.D.3d 1044, 1048, 179 N.Y.S.3d 329 (2d Dep't 2022) (remedies of attachment and preliminary injunction "are distinct, operate differently, and are not interchangeable"); *B. Riley FBR, Inc. v. Clarke*, Case No. 18-cv-2318 (NEB/BRT), 2018 WL 7253601, at *3 (D. Minn. Nov. 21, 2018) ("Rule 64 and Rule 65 are separate rules providing distinct remedies."); *see also Security Pacific Nat'l Bank v. Nyland (CF8) Ltd.*, No. 91 CIV. 2647 (PNL), 1991 WL 267768, at *5 (attachment and preliminary injunction are "separate theories" of provisional relief); *Haggiag v. Brown*, 728 F.Supp. 286, 290 (S.D.N.Y. 1990) (preliminary injunction and attachment are "separate provisional remedies"). "Unlike Federal Rule of Civil Procedure 64, which governs attachment in federal court, Rule 65, which governs

3

injunctions, does not incorporate state-law standards for granting relief." *In re M.B. Int'l W.W.L.*, No. 12 Civ. 4945(DLC), 2012 WL 3195761, at *9 (S.D.N.Y. Aug. 6, 2012). And unlike a preliminary injunction, which is obviously a form of equitable relief, attachment is a *legal* remedy that is purely statutory. *See* NYCPLR 6201 (attachment available only in an action for a "money judgment"); *Kraemer v. Williams*, 131 A.D. 236, 237, 115 N.Y.S. 721 (2d Dep't 1909) (characterizing attachment as one of the "legal remedies" that must be exhausted before pursuing equitable relief); *Philatelic Found. v. Kaplan*, No. 85 Civ. 8571 (RWS), 1986 WL 5629, at *2 (S.D.N.Y. May 9, 1986) (characterizing attachment as "a legal remedy which specifically addresses the problem of prejudgment security"), *abrogated on other grounds by Aramony v. United Way of America*, 969 F.Supp. 226, 232-33 (S.D.N.Y. 1997); N.Y. Jur. 2d Creditors' Rights § 22; 6 Am. Jur. 2d Attachment and Garnishment § 12. Plaintiffs offer no authority whatsoever for the proposition that a federal court's equitable authority to issue a *preliminary injunction* would also give a federal court the inherent authority to provide the distinct legal and statutory provisional remedy of *attachment*. Such a conclusion would, in the words of the Supreme Court, "render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance." *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330 (1999).

### B. The statutory requirement to move for confirmation of the attachment order within five days applies in this Court.

Next, adidas argues that, even if Rule 64 and the NYCPLR *are* the only source of authority for the Court to issue an attachment order, the Court can nevertheless ignore New York's requirement that a motion to confirm be brought within five days[2] as "procedural" rather

---

[2] For some reason, adidas suggests that the applicable period is ten days, rather than five. (*See* Pet. Resp. at 17-18.) As Yeezy's opening memorandum explains, the longer ten-day period pertains only in circumstances that are inapplicable here. (*See* Yeezy Mem. at 3 & n. 1.) Regardless, adidas did not comply with any applicable period.

4

than "substantive[.]" (Pet. Resp. at 17-18.) adidas's *Erie* argument fails, however, because Rule 64 *expressly adopts* state procedure for purposes of the remedy of attachment, absent a countervailing federal statute. *See* Fed. R. Civ. P. 64(a) (attachment is available "under the law of the state where the court is located"); *Belgian American Mercantile Corp. v. De Groeve-Marcotte and Fils*, 433 F.Supp. 1098, 1101 (S.D.N.Y. 1977) (Rule 64 is "the total incorporation of state attachment procedure into federal law"). The Second Circuit has specifically held that Fed. R. Civ. P. 6(b) does not authorize a federal court to ignore time limitations set forth in New York's attachment statute. *See Carroll v. Manufacturers Trust Co.*, 202 F.2d 714, 715 (2d Cir. 1953). And this Court has specifically acknowledged that New York's time limit to seek confirmation applies in federal court. *See Alpha Petroleum Trading Co. v. Richards*, No. 85 Civ. 8553 (CSH), 1986 WL 3515, at *1 (S.D.N.Y. Mar. 16, 1986) ("Plaintiff has filed the requisite undertaking and has timely moved to confirm the order of attachment pursuant to CPLR § 6211(b)."). *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263 (2d Cir. 2002), cited by adidas (Pet. Resp. at 18), suggests nothing to the contrary—there, the expiration of the applicable 10-day window fell on a weekend, meaning that the confirmation motion was timely filed the following Monday. *See id.* at 268 (district court entered *ex parte* order of attachment on January 19, 2022 (a Wednesday) and motion to confirm was filed on January 31, 2022 (a Monday)).

Moreover, the time limitation set forth in NYCPLR 6211(b) is not a mere procedural rule—it is a substantive limitation on the continued availability of the remedy of attachment, more akin to a statute of limitation than a mere pleading deadline. Statutes of limitation are considered substantive law. *See, e.g., Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015). Like the failure to bring suit within the time set forth in a statute of limitation, the failure to bring a confirmation motion within the five-day period has immediate substantive consequences: "If

5

plaintiff fails to make such motion within the required period, the order of attachment and any levy thereunder shall have no further effect…" *See* NYCPLR 6211(b). And, while a New York court (like a federal court pursuant to Fed. R Civ. P. 6(b)) generally has discretion to extend the time fixed by statute or rule to do any act, *see* NYCPLR 2004, a New York court has *no* discretion to extend the deadline to bring a confirmation motion. *See Thadford Realty Co. v. L.V. Income Properties Corp.*, 101 A.D.2d 814, 814, 476 N.Y.S.2d 346 (2d Dep't 1984) ("The time period of five days after levy within which the motion to confirm must be brought is the statutory maximum period. The court only has discretion to set a shorter period"). The same is true with respect to extending a statute of limitation. *See, e.g., Sengstacken v. Zoning Bd. of Appeals of Town of Ramapo*, 87 A.D.2d 651, 652, 448 N.Y.S.2d 521 (2d Dep't 1982). The inflexibility of the confirmation rule is consistent with its substantive purpose—to guarantee a respondent's due process rights. *See Mischon de Reya New York LLP*, 2011 WL 6957595, at *6; *Al-Dohan v. Kouyoumjian*, 451 N.Y.S.2d 367, 368, 114 Misc.2d 170 (Sup. Ct. N.Y. Cty. 1982).

Regardless of whether it is considered procedural or substantive, the requirement that a petitioner bring a confirmation order within five days after levy on an order of attachment applies in this Court. Accordingly, "the order of attachment and any levy thereunder shall have no further effect and shall be vacated upon motion." NYCPLR 6211(b).

### C. Under JAMS rules, the arbitration did not commence until more than thirty days after the attachment order.

adidas also attempts to excuse the failure to commence arbitration within thirty days of the attachment order as required by NYCPLR 7502(c), arguing that it *filed its demand* for arbitration within thirty days, even if JAMS did not "confirm" the commencement of the arbitration until after the expiration of the thirty-day period. (Pet. Resp. at 19-20.) But adidas must live with the rules of the arbitration organization that it chose: The JAMS Comprehensive

6

Arbitration Rules & Procedures expressly provide that "[t]he Arbitration is deemed commenced when JAMS issues a Commencement Letter…" JAMS Comprehensive Arbitration Rules & Procedures, Rule 5(a), *available at* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-5. The cases adidas cites for the proposition that an arbitration is deemed commenced upon the filing of a demand for arbitration (*see* Pet. Resp. at 19-20) are of no help to adidas, for the rules of arbitration organizations in those cases—unlike JAMS—expressly provide that an arbitration is commenced upon the filing of a demand. *See* International Chamber of Commerce Arbitration Rules, Article 4(2), *available at* https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/#block-accordion-4 ("The date on which the Request [for Arbitration] is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitration"); American Arbitration Association Commercial Rule R-4(h), *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf ("The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration.").

If adidas wished to ensure compliance with the statutory deadline, it could have prompted JAMS to expedite its issuance of the Commencement Letter. It did not do so, and now must accept the consequences: "the order granting [provisional] relief shall expire and be null and void and costs, including reasonable attorney's fees, awarded to the respondent." NYCPLR 7502(c).

### D. adidas still has not shown that an arbitration award in its favor may be rendered ineffectual without provisional relief.

Under New York law, "[a]ttachment is considered a harsh remedy" and its requirements are "strictly construed in favor of those against whom it may be employed." *Grafstein v. Schwartz*, 100 A.D.3d 699, 699, 953 N.Y.S.2d 681 (2d Dep't 2012). In particular, to "meet its burden of demonstrating that the arbitration award sought may be rendered ineffectual without

7

an order of attachment[,]" adidas must "show[ ] through admissible evidence that respondent would be financially unable to pay the arbitration award or would undertake deceptive actions to avoid paying it, if one were rendered." *See Mermaid Marine, Ltd. v. Maritime Capital Mgmt. Partners, Ltd.*, 147 A.D.3d 498, 498, 46 N.Y.S.3d 780 (1st Dep't 2017). Despite taking another bite at the apple, adidas still falls well short of carrying that burden.

First, adidas again pounds the table concerning the merits of its claim for relief. (Pet. Resp. at 20-21.) But showing that "it is probable that the plaintiff will succeed on the merits" is an entirely separate inquiry from showing that an arbitration award "may be rendered ineffectual" absent an order of attachment. *See* NYCPLR 6212(a), 7502(c). The failure to grant attachment of funds to which adidas claims it is entitled "will not render any subsequent arbitration award in [adidas's] favor 'ineffectual,'" because "[i]f [adidas] prevails after arbitration, [it] will be entitled to reimbursement of all [funds] found to have been improperly [withheld]." *See Gamma v. Ferrara*, 274 A.D.2d 479, 481, 711 N.Y.S.2d 462 (2d Dep't 2000).

Second, adidas argues for the first time that Ye is (or soon will be) insolvent. (Pet. Resp. at 21-23.) While adidas attempts once again to minimize its burden to put forth actual evidence of insolvency, the law is clear that adidas's showing is inadequate. "To conclude that a debtor is insolvent is not the same as to speculate or to harbor suspicions that the debtor is not in optimum financial condition[.]" *In re Frigitemp Corp.*, 34 B.R. 1000, 1005 (S.D.N.Y. 1983). adidas must come forth with "admissible evidence" that Yeezy "would be financially unable to pay the arbitration award[.]" *See Mermaid Marine, Ltd.*, 147 A.D.3d at 498. "[T]he burden is on [adidas], and the Court cannot speculate about solvency and asset-hiding at this early stage absent more evidence." *See BMaddox Enters. LLC v. Oskouie*, No. 17-CV-1889 (RA), 2017 WL 4797906, at *2 (S.D.N.Y. Oct. 23, 2017).

adidas's evidence of Yeezy's insolvency falls far short of the evidentiary standard. adidas's assertion that many of Ye's assets are illiquid or subject to liens is a vague statement that (1) does not establish Ye's (much less Yeezy's) current or imminent insolvency; and (2) is based on nothing more than "the best of [its in-house counsel's] knowledge and belief," meaning that it lacks any foundation in personal knowledge and is therefore clearly inadmissible evidence. (*See* Second McIntire Decl. ¶ 9.) Even worse, adidas cites to an anonymously-sourced article about Ye's purported financial difficulties from Page Six of the *New York Post*—hardly a reputable source, and unquestionably an inadmissible one. (*See id.* Ex. B at 13-16.) Similarly, adidas cites an article from a website called highsnobiety.com that quotes anonymous sources as saying that Ye's Malibu property had been "left to rot"—again, plainly inadmissible evidence. (*See id.* Ex. C at 9-14.) adidas also cherry-picks the quotes it uses from the press articles it cites—for example, adidas cites to an article in which Ye was quoted as complaining that the attachment had interfered with the use of his Apple Pay, but notably omitted that the same article estimated Ye was worth $400 million—several multiples of the $75 million adidas has sought to attach. (*Id.* Ex. C at 2.) Likewise, the highsnobiety.com article states that "Ye's still very rich[,]" had been staying in a $2,000-a-night hotel, and owns "acres of land" around the world, undermining adidas's narrative that Ye is in imminent danger of insolvency. (*See id.* at 14.)

Nor do Ye's own statements as reported in the press support adidas's insolvency allegations. Ye did say that he owed $50 million in taxes, but he did *not* say that he did not have the means to pay them. (*Id.* Ex. B at 4.) And in the same interview, Ye stated that he was "obviously not the most financially literate person on the planet[,]" suggesting that his off-the-cuff statements concerning his financial condition should be taken with a grain of salt. (*Id.*) Ye's statements that the attachment of his bank accounts interfered with the operation of his Apple

9

Pay account (*id.* Ex. C at 2, 4, 7) suggests nothing more than that his Apple Pay account may have been linked to one of the several accounts that were subject to the attachment order—not that he has no other funds with which to pay for personal expenses.

Yeezy is under no obligation to disprove its insolvency in the absence of any admissible evidence to the contrary. But, to set the record straight and put to rest adidas's baseless allegations, Yeezy has submitted herewith admissible evidence in the form of a sworn declaration from its accountant establishing that Yeezy is not, in fact, insolvent—its assets exceed its liabilities, and its is able to pay its debts as they come due. (*See* Allen Decl. ¶ 3.)

[redacted]

### E. There is no legal basis on which the Court can leave the attachment order in effect while adidas seeks a new one.

Finally, adidas pleads with the Court to leave the attachment order in place for at least 14 days so that it can attempt to rectify any deficiencies. (Pl. Resp. at 23-24.) But there is no basis for the Court to do so. Because adidas failed to bring a timely confirmation motion, the attachment order "shall have no further effect…" *See* NYCPLR 6211(b). And because the arbitration was not timely commenced, that order is "null and void[.]" *See* NYCPLR 7502(c). Finally, by responding to this motion, adidas has already had "a reasonable opportunity to correct any defect" with respect to its showing on the grounds for attachment, yet has failed to do so. *See* NYCPLR 6223(a).

### III. CONCLUSION

For the foregoing reasons, the Court should immediately vacate the attachment order.

DATED: May 16, 2023

Respectfully submitted,

**ANGELI LAW GROUP LLC**

_____
Peter D. Hawkes
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelilaw.com

*Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that I caused a true copy of the foregoing **YEEZY, LLC AND YEEZY MARKETING, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** to be served on:

Mark P. Goodman
William H. Taft V
Floraine Lavaud
Debevoise & Plimpton, LLP
919 Third Avenue
New York, NY 10022

*Counsel for Petitioner adidas AG*

DATED: May 15, 2023

                                   **ANGELI LAW GROUP LLC**

                                   Peter D. Hawkes
                                   121 SW Morrison Street, Suite 400
                                   Portland, OR 97204
                                   peter@angelilaw.com

                                   *Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*