UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | Misc. No.: 1:22-mc-00320-VEC<br><br>**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | adidas cannot obtain the *equitable* relief of a TRO in aid of its purely *legal* remedies. | 2 |
| | | 1. Because attachment is a purely legal remedy, *Grupo Mexicano* prohibits the relief adidas seeks. | 2 |
| | | 2. adidas fails to state any equitable claim to the funds at issue | 3 |
| | B. | adidas cannot show a likelihood of success on the merits. | 7 |
| | C. | adidas cannot show irreparable harm. | 8 |
| | D. | adidas cannot show that an arbitration award in its favor will be rendered ineffectual without provisional relief. | 10 |
| III. | CONCLUSION | | 10 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F.Supp.3d 326 (S.D.N.Y. 2020) .............................. 9

*Aramony v. United Way of America*, 969 F.Supp. 226 (S.D.N.Y. 1997) ....................................... 2

*Bates v. Dep't of Motor Vehicles*, 30 Or. App. 791, 568 P.2d 686 (1977) ..................................... 7

*Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ............................. 9

*Brown's Industries, Inc. v. Snow Mountain Pine Co.*, Civ. No. 87-1119-FR, 1989 WL 142411
    (D. Or. Oct. 26, 1989) .............................................................................................................. 5

*Capehart Corp. v. Shanghai Comm. Bank, Ltd.*, 49 A.D.2d 521, 369 N.Y.S.2d 751 (1st Dep't
    1975) ........................................................................................................................................ 2

*Erickson v. Kidder Peabody & Co., Inc.*, 166 Misc.2d 1, 630 N.Y.S.2d 861 (Sup. Ct. N.Y. Cty.
    1995) ...................................................................................................................................... 10

*Flaherty v. Bookhultz*, 207 Or. 462, 291 P.2d 221, 297 P.2d 856 (1956) ...................................... 5

*Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) ..................................................................... 9

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................................... 5

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ...... passim

*K.W.F. Realty Corp. v. Kaufman*, 16 A.D.3d 688, 793 N.Y.S.2d 67 (2d Dep't 2005) ................. 10

*Kraemer v. Williams*, 131 A.D. 236, 115 N.Y.S. 721 (2d Dep't 1909) ......................................... 2

*Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 404 P.3d 912 (2017) ........................ 6

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489(JMF), 2013 WL 1915330
    (S.D.N.Y. May 9, 2013) .......................................................................................................... 4

*Philatelic Found. v. Kaplan*, No. 85 Civ. 8571 (RWS), 1986 WL 5629 (S.D.N.Y. May 9, 1986) 2

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F.Supp.2d 241 (S.D.N.Y. 2001) ................................................................................................................. 4

*SG Cowen Securities Corp. v. Messih*, 224 F.3d 79 (2d Cir. 2000) ............................................... 8

*Tupper v. Roan*, 349 Or. 211, 243 P.3d 50 (2010) ......................................................................... 6

**Rules**

Fed. R. Civ. P. 64 ............................................................................................................................ 2

NYCPLR 6201 ................................................................................................................................ 2

NYCPLR 7502(c) ..................................................................................................................... 8, 10

**Treatises**

30 N.Y. Jur. 2d Creditors' Rights § 22 ........................................................................................... 2

*Restatement (3d) of Restitution and Unjust Enrichment* (2011) ................................................ 6, 7

## I.  INTRODUCTION

The Court should deny the request by Petitioner adidas AG ("adidas") for a temporary restraining order against Respondents Ye; Yeezy, LLC; Yeezy Marketing LLC; and Yeezy Footwear LLC (collectively, "Yeezy" or "Respondents") for four reasons.

First, adidas continues to conflate legal and equitable remedies. By seeking "a temporary restraining order…pending the Court's ruling on a forthcoming motion to renew the [vacated] attachment[,]" adidas seeks *equitable* relief (a TRO) in aid of a *legal* remedy (attachment). Further, adidas's underlying equitable claims in the arbitration cannot provide a basis for a temporary restraining order, because adidas has no likelihood of success on those claims. Under *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Court lacks the equitable power to grant the relief adidas requests.

Second, even with respect to its legal claim for breach of contract, adidas cannot show a likelihood of success on the merits. adidas admits that it does not know how much, if any, of the $75 million it seeks to freeze it is actually entitled to recover. That is an issue to be determined in the arbitration—along with a host of other issues, including *adidas's* liability to *Yeezy* for its own misconduct.

Third, adidas cannot show irreparable harm in the absence of a TRO. adidas's sole viable claim relating to the funds at issue is a claim for money damages—which, particularly in the absence of a showing of current or imminent insolvency, cannot constitute irreparable harm.

Finally, adidas still has not shown that an arbitration award in its favor would be "rendered ineffectual" without provisional relief. There remains no evidence in the record that Yeezy is currently or imminently insolvent, or that Yeezy is seeking to hide funds from adidas or

1

to place them beyond adidas's reach. Thus, adidas cannot satisfy the threshold criterion for the relief it seeks under NYCPLR 7502.

## II.     ARGUMENT

### A. adidas cannot obtain the *equitable* relief of a TRO in aid of its purely *legal* remedies.

#### 1. Because attachment is a purely legal remedy, *Grupo Mexicano* prohibits the relief adidas seeks.

In this motion, adidas expressly seeks a TRO "freezing and preventing" Yeezy "from accessing or disposing of" the funds previously subject to this Court's attachment order "pending the Court's ruling on a forthcoming motion to renew the attachment." (ECF No. 48 at 2.) Thus, what adidas asks for is one provisional remedy (a TRO) in aid of another (attachment).

Attachment, however, is a purely *legal* remedy. Under New York law—which, as this Court has recognized (ECF No. 46 at 4), governs the remedy of attachment in this Court pursuant to Fed. R. Civ. P. 64—attachment is only available in an action for "a money judgment." NYCPLR 6201. "[T]he provisional remedy of attachment does not lie" for claims for "equitable relief[.]" *Capehart Corp. v. Shanghai Comm. Bank, Ltd.*, 49 A.D.2d 521, 522, 369 N.Y.S.2d 751 (1st Dep't 1975); *see also Kraemer v. Williams*, 131 A.D. 236, 237, 115 N.Y.S. 721 (2d Dep't 1909) (characterizing attachment as one of the "legal remedies" that must be exhausted before pursuing equitable relief); *Philatelic Found. v. Kaplan*, No. 85 Civ. 8571 (RWS), 1986 WL 5629, at *2 (S.D.N.Y. May 9, 1986) (characterizing attachment as "a legal remedy which specifically addresses the problem of prejudgment security"), *abrogated on other grounds by Aramony v. United Way of America*, 969 F.Supp. 226, 232-33 (S.D.N.Y. 1997). Attachment is "strictly a creature of statute" and "entirely a statutory remedy." 30 N.Y. Jur. 2d Creditors' Rights § 22 (collecting cases).

2

In *Grupo Mexicano*, the Supreme Court held that a federal court has "no authority to issue a preliminary injunction preventing [parties] from disposing of their assets pending adjudication of [opposing parties'] contract claim for money damages." 527 U.S. at 333. The Court noted that federal courts' authority to issue injunctive relief "depend[s] on traditional principles of equity jurisdiction." *Id*. at 318-19 (citation omitted). As the Court explained, "the equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence." *Id*. at 332. The Court found that a preliminary injunction freezing a party's assets that were subject only to a claim for money damages "does not have a basis in the traditional powers of equity courts." *Id*. at 327. Of particular salience here, the Court observed that recognizing such an equitable remedy "could render Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance." *Id*. at 330.

What adidas seeks here is precisely what *Grupo Mexicano* prohibits: a backdoor, prejudgment attachment of Yeezy's assets through the exercise of the Court's equitable power to issue a TRO. Because attachment itself is a purely legal remedy only available in aid of a legal claim for money damages, adidas cannot invoke this Court's equitable authority in aid of the remedy of attachment.

**2. adidas fails to state any equitable claim to the funds at issue.**

adidas also cannot rely on the caselaw distinguishing *Grupo Mexicano* in cases where a party has an equitable claim to assets it seeks to freeze through a TRO or preliminary injunction, because adidas has no such viable claim in the underlying arbitration.

adidas's claim to entitlement to the funds at issue turns on Section 4 of the August 15, 2020 Payment Confirmation. (*See* ECF No. 30 at 19.) Under that provision (█████████

3

███████████), upon termination of the Licensing and Endorsement Agreement (the "Agreement"), Yeezy "shall return to adidas *an amount equal to*: (i) the total amount of ███████ payments made by adidas during the twelve (12) months prior to expiration or termination, minus (ii) ████████████████████████████████████████ ████████████████████████████████████████…" (*Id.* (emphasis added).) Thus, under the express contractual language the adidas itself drafted, adidas does *not* have a security interest or other equitable lien or entitlement to specific funds.[1] *Cf., e.g., Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489(JMF), 2013 WL 1915330, at *3 (S.D.N.Y. May 9, 2013) (preliminary injunction available where, in addition to money damages claim, plaintiff "asserts an equitable interest in the property it alleges Surgicraft fraudulently transferred to" the defendant); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F.Supp.2d 241, 249-50 (S.D.N.Y. 2001) (*Grupo Mexicano* did not control where, in addition to a claim for money damages, plaintiff had a perfected security interest in the specific funds at issue). Rather, adidas has a claim for *monetary damages* in "an amount equal to" the difference between the ███████ payments it made during the prior year, less any qualifying expenditures of those funds.

> Almost invariably...suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's

---

[1] Even if adidas *did* have an equitable claim to specific funds, it has made no showing that the funds it seeks to freeze and ultimately attach—particularly, funds in Ye's accounts or accounts of entities other than Yeezy Marketing—are the *same funds* that adidas transferred to Yeezy Marketing. The only evidence that adidas offers is its own in-house counsel's unfounded speculation that Yeezy "moved ████████████████████ from its Wyoming bank account to the New York accounts" (ECF No. 30, ¶ 14) and its outside counsel's hearsay assertion that funds from the Yeezy Marketing account at JP Morgan Chase were transferred to another, unspecified account owned by Yeezy LLC (ECF No. 40, ¶ 4).

> breach of a legal duty…. And money damages are, of course, the classic form of *legal* relief.

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (cleaned up; emphasis in original).

It is true that adidas's Statement of Claims in the arbitration purports to assert equitable claims for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (ECF No. 40, Ex. E at 20.) But the fact that "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction" does not change the nature of the relief sought. *Great-West Life*, 534 U.S. at 211 n. 1. Here, all of adidas's claims relating to the Agreement are governed by Oregon law (ECF No. 30 at 15), and adidas has no equitable claims for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ with respect to the ▓▓▓▓▓▓▓ under Oregon law.

> An accounting is an equitable remedy which is available under certain circumstances. An interested party may compel an accounting 1) when a trust has been established; 2) when a fiduciary relationship exists between the parties and one party has the duty to render an account to the other; 3) when an accounting is incidental to other equitable relief; and 4) when the account is too complex for a jury to unravel.

*Brown's Industries, Inc. v. Snow Mountain Pine Co.*, Civ. No. 87-1119-FR, 1989 WL 142411, at *22 (D. Or. Oct. 26, 1989) (citing *Flaherty v. Bookhultz*, 207 Or. 462, 466-67, 291 P.2d 221, 297 P.2d 856 (1956)). Here, adidas does not claim that any trust has been established or that Yeezy owes adidas any fiduciary duty. Nor does adidas claim that equity jurisdiction is necessary because the account is too complex for a jury to unravel—nor *could* it make such a claim, given that this dispute is in arbitration, and will not be tried to a jury in any event. And, as shown below, there is no other basis for equitable relief to which an accounting could be incidental.

Under Oregon law, "the concept of constructive trust does not stand on its own as a substantive claim, but exists solely as an equitable *remedy*, available to divest an individual who

5

has been unjustly enriched of property that he or she ought not, in equity and good conscience, hold and enjoy." *Tupper v. Roan*, 349 Or. 211, 219, 243 P.3d 50 (2010) (emphasis in original; internal quotation marks and citation omitted). "The concepts of constructive trust and unjust enrichment thus are intertwined: When the law employs a constructive trust, the doctrine of unjust enrichment governs generally the substantive rights of the parties." *Id*. (internal quotation marks and citation omitted). "Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132, 404 P.3d 912 (2017). Among the "other authorities" on which Oregon courts place particular reliance is the *Restatement (3d) of Restitution and Unjust Enrichment* (2011) ("*Restatement*"). *See id*. at 125-33 (discussing the development of the *Restatement* and relying on it extensively to analyze unjust enrichment claim). One of the "limiting principles" of unjust enrichment, as set forth in the *Restatement*, that that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." *Restatement* § 2(2). While there is an exception to that rule "[i]f a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement," that exception is "infrequently available," and is specifically *unavailable* when an award of damages "permit[s] the promisee to acquire a full equivalent to the promised performance in a substitute transaction." *Id*. § 39(1)-(2) & cmt. a. Moreover, "it would be erroneous and anachronistic to regard this newly-formulated rule as a species of equitable relief[.]" *Id.* cmt. c.

  Here, adidas is not entitled to the equitable remedy of a constructive trust with respect to the funds at issue because it has no claim for unjust enrichment with respect to those funds.

6

adidas claims that the Agreement defines the parties' obligations, and it therefore "displac[es]…any inquiry into unjust enrichment." *See Restatement* § 2(2). That adidas purports to seek ███████████████████████████████████ does not change the analysis. First, adidas is not entitled to any such profits, even if they existed, because it can obtain the "full equivalent to the promised performance" through an award of monetary damages. *See id*. § 39(1)-(2). Second, even if adidas *were* entitled to such profits, that form of restitution is not "a species of equitable relief." *Id*. cmt. c.

Finally, adidas's catchall claim for ████████████ likewise gets it nowhere. "Injunctive relief is only available if there is not an adequate remedy at law." *Bates v. Dep't of Motor Vehicles*, 30 Or. App. 791, 973, 568 P.2d 686 (1977). As established above, adidas *has* an adequate remedy at law—an award of money damages in the amount of the ████████ that were not spent on qualified expenses. It therefore has no claim for ████████.

**B. adidas cannot show a likelihood of success on the merits.**

While adidas asserts that "it is a near certainty" that it will succeed on the merits of its claim to the funds at issue (ECF No. 48 at 3), that boast could not be further from the truth. As just established, adidas has *no* likelihood of success on its equitable claims relating to the ████████. And even with respect to its garden-variety breach of contract claim with respect to those funds, adidas's submissions show that it has no idea how much, if any, of the $75 million it is entitled to recover. adidas previously admitted that it is only entitled "to return [of] ████████ provided by adidas over the past 12 months, *less any qualified expenditures*." (ECF No. 30, ¶ 12 (emphasis added).) Even in its current filing, adidas admits that it is entitled to recover "*up to* $75 million" from Yeezy, but that it does not yet know how much; its "audit of the funds is now underway." (ECF No. 48 at 2-3 (emphasis added).) Moreover, regardless of the purported results of adidas's self-serving "audit," there are significant issues

7

that will remain to be resolved in the arbitration with respect to the funds at issue, including, but not limited to, [redacted] (*See* ECF No. 30 at 20.)

In addition, the parties' dispute over the funds at issue in this motion is but one part of the overall dispute between the parties, the outcome of which could dramatically affect who owes who money, and how much. [redacted] (Hawkes Decl. Ex. 1 at 30-31.) [redacted] (*Id.* at 19-22, 32-33.) [redacted] (*Id.* at 22-29, 33-40.) [redacted] (*See*, *e.g.*, *id.* Exs. 2-3.) [redacted] ECF No. 42, ¶ 4.)

In short, adidas has not shown that, at the end of the day, it is likely to succeed in obtaining a judgment for a single dollar—much less $75 million—from Yeezy.

**C. adidas cannot show irreparable harm.**

In considering a request for preliminary injunctive relief under NYCPLR 7502(c), this Court remains bound by "the traditional standards governing" such relief, including the requirement to show irreparable harm in the absence of an injunction. *See SG Cowen Securities Corp. v. Messih*, 224 F.3d 79, 84 (2d Cir. 2000). Such a showing cannot be made when money damages are an available remedy. *See id.*; *see also*, *e.g.*, *Ford v. Reynolds*, 316 F.3d 351, 355 (2d

Cir. 2003) ("To establish irreparable harm, the injury alleged must be one requiring a remedy of more than mere money damages.") (citation and internal quotation marks omitted).

At times, courts in this Circuit have suggested that a party can show irreparable harm even on a claim for purely monetary damages when the party owing the obligation is insolvent or on the brink of insolvency. *See Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999); *Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F.Supp.3d 326, 340 (S.D.N.Y. 2020). But that exception cannot be squared with *Grupo Mexicano*, which expressly rejected it. *See* 527 U.S. at 321 n. 4 ("some courts said that insolvency was an exception" to the rule that a creditor could not obtain a pre-judgment asset freeze, but "[t]his Court has concluded that particular exception does not exist"); *see also id.* at 331 (observing that recognizing equitable authority for an equitable asset freeze in monetary damages cases "might induce creditors to engage in a 'race to the courthouse' in cases involving insolvent or near-insolvent debtors, which might prove financially fatal to the struggling debtor.").

Regardless, to establish that exception, "a movant must show that the risk of insolvency is likely and imminent." *Alpha Capital Anstalt*, 432 F.Supp.3d at 340 (citation omitted). As explained in Yeezy's reply memorandum in support of the motion to vacate the attachment order (ECF No. 41 at 8-10), adidas has failed to make such a showing. adidas's evidence consists of little more than anonymously-sourced statements in questionable publications that are undercut by other assertions in the same hearsay materials on which adidas relies. Meanwhile, Yeezy has submitted a sworn statement from its accountant unequivocally establishing that Yeezy is not, in fact, insolvent. (*See* ECF No. 42.)

**D. adidas cannot show that an arbitration award in its favor will be rendered ineffectual without provisional relief.**

In addition to the traditional equitable criteria for granting temporary injunctive relief, a petitioner seeking such relief pursuant to NYCPLR 7502(c) must show that an arbitral award to which that party may be entitled may be rendered ineffectual without it. *See*, *e.g.*, *K.W.F. Realty Corp. v. Kaufman*, 16 A.D.3d 688, 689, 793 N.Y.S.2d 67 (2d Dep't 2005). adidas has still come nowhere close to satisfying that standard. As explained above, adidas has not shown that Yeezy is insolvent or on the brink of insolvency. Nor has it shown that Yeezy is attempting to hide funds from adidas or put them beyond adidas's ability to reach them to enforce an arbitral award. *See Erickson v. Kidder Peabody & Co., Inc.*, 166 Misc.2d 1, 5, 630 N.Y.S.2d 861 (Sup. Ct. N.Y. Cty. 1995) ("CPLR 7502(c) does not entitle petitioners to a guaranty that their awards following arbitration will be satisfied…Absent a showing that [the respondent] intends to compromise its assets to the detriment of petitioners, provisional relief pursuant to CPLR 7502(c) is not appropriate."). For that reason as well, adidas's request for provisional relief fails.

### III.   CONCLUSION

The Court should deny adidas's motion for a temporary restraining order.

DATED: May 29, 2023

                                          Respectfully submitted,

                                          **ANGELI LAW GROUP LLC**

                                             s/Peter D. Hawkes
Peter D. Hawkes, Bar No. 4245338
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelilaw.com
Telephone: (503) 954-2232
Fax: (504) 227-0880

*Attorneys for Respondents*

10