UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE APPLICATION
OF ADIDAS AG FOR AN ORDER OF
ATTACHMENT IN AID OF ARBITRATION

No. 22-mc-320 (VEC)

DECLARATION OF KEITH McINTIRE
IN SUPPORT OF RENEWED PETITION FOR AN ORDER OF ATTACHMENT

I, Keith McIntire, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, declare as follows:

1. I am an attorney licensed to practice law in Oregon. I hold the title of Associate General Counsel for adidas America, Inc., a subsidiary of adidas AG ("**adidas**"). I submit this declaration on personal knowledge, upon review of certain of adidas's books and records, and in support of adidas's Renewed Petition for Order of Attachment (the "**Petition**"), and accompanying Memorandum of Law, each dated May 29, 2023. I am over the age of 18 and competent to testify.

2. To date, adidas has provided Ye (formerly known as Kanye Omari West) and his companies, Yeezy, LLC, Yeezy Marketing LLC, and their affiliates (together with Ye, collectively "**Yeezy**") with access to ███████████████████████ ███████████████████████████████████████████████████ ███████████████████████ adidas submits the Petition in order to prevent the dissipation of ███████████ that adidas knows to be held in accounts belonging to

Yeezy and maintained by JPMorgan Chase N.A. in New York. As described below, adidas has good cause to believe that those assets are at imminent risk of dissipation.

3. A true and correct copy of excerpts from the Licensing and Endorsement Agreement of January 1, 2017 between adidas AG, Yeezy, LLC, and Ye, as amended (the "**Agreement**"), is attached as Exhibit 1 to this declaration.

4. The Agreement, as amended, provided the legal framework under which adidas and Ye, a California domiciliary, collaborated in order to promote and sell billions of dollars of footwear and apparel.

5. As referenced in the Agreement:

    a. adidas is a German entity with its primary U.S. presence in Oregon.

    b. Yeezy, LLC is a Delaware limited liability company. The Agreement refers to Yeezy, LLC as "Lender." Ex. 1, at 1.

    c. Yeezy Marketing LLC is a California limited liability company, though upon information and belief, this is incorrect, because Yeezy Marketing LLC is a Wyoming limited liability company.

    d. Yeezy Footwear LLC is a Wyoming limited liability company.

    e. In his individual capacity, Ye is also a party to the Agreement and is required to substitute himself for Yeezy, LLC in the event that the entity ceases to exist or fails to perform. Ex 1, at 9.

    f. Yeezy Footwear LLC and Yeezy Marketing are wholly owned, directly or indirectly, by Ye. Ex. 1, at 14, 15.

6. To the best of my knowledge and belief, neither Yeezy, LLC, Yeezy Marketing LLC, nor Yeezy Footwear LLC is registered to conduct business in New York.

7. To the best of my knowledge and belief, and as represented to adidas by Yeezy, LLC and Ye, Yeezy Marketing LLC and Yeezy Footwear LLC are (and at all times during the term of the Agreement were) affiliates of Yeezy, LLC, and the respective obligations and liabilities of Yeezy, LLC, Yeezy Marketing LLC, and Yeezy Footwear were joint and several. *See* Ex. 1, at 20.

8. The Agreement includes provisions by which adidas paid ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, at 21.

9. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, at 12. If the Agreement was terminated, for any reason, Yeezy, LLC and its affiliates were obligated to return any ▇▇▇▇▇▇ provided in the prior 12 months, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ Ex. 1, at 19.

10. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11.     The Agreement also provides that, to the extent they cannot be settled through mediation, "any disputes arising out of or relating to [the] Agreement or the breach, termination, enforcement, interpretation or validity thereof . . . shall be determined by arbitration in Portland[,] Oregon before one (1) arbitrator." Ex. 1, at 7-8. The "Arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules." Ex. 1, at 19. The applicable JAMS Rules provide that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." JAMS Rule 24(e), effective June 1, 2021.

12.     In 2022, Ye engaged in a pattern of highly public and offensive statements and other conduct that ███████████████████████████████ destroyed billions of dollars of brand value, and ultimately left adidas with no option but to terminate the Agreement. Ye's offensive conduct was well documented in the press. True and correct copies of articles describing Ye's reprehensible and widely condemned public statements and other conduct are attached as Exhibit 2 to this declaration.

13.     adidas formally terminated the Agreement by letter dated November 5, 2022. A true and correct copy of that letter and adidas's related press release is attached as Exhibit 3 to this declaration.

14.     As a result of that termination, Yeezy was obligated to return ██ ████████ provided by adidas over the prior 12 months, less any permitted

4

expenditures. Ex. 1, at 19. Although adidas has demanded return of the ███████ ██████ that demand has been met with silence. Ex. 3.

15. adidas is aware that, of the $75 million ████████████ transferred to Yeezy over the 12 months preceding the termination, $50 million was paid to bank accounts in Wyoming, while $25 million was paid to accounts in New York maintained by JPMorgan Chase, N.A. A true and correct copy of adidas's documentation of payments to Yeezy is included as Exhibit 4 to this declaration.

16. During the summer of 2022, Yeezy instructed adidas to send future transfers ████████████ to an account maintained by Yeezy Marketing LLC in the New York branch of JPMorgan Chase. At the same time, adidas was informed by Yeezy of another account maintained at the same bank by Yeezy Footwear LLC. A true and correct copy of ACH instructions for transfers to those accounts are attached as Exhibit 5 to this declaration. Upon information and belief, because it was apparent that at this time Yeezy was conducting its banking through JPMorgan Chase, it is likely that Yeezy moved ██████████████████ from its Wyoming bank account to the New York accounts.

17. At or around October 12, 2022, JPMorgan Chase reportedly informed Yeezy via email that it intended to terminate its relationship with Yeezy and Ye, including closing the accounts in which adidas's ████████████ reside, and making those funds payable to Yeezy via check or transfer to an alternate financial institution by a deadline of November 21, 2022. True and correct copies of public reporting on the

5

email purportedly sent by JPMorgan Chase, including a screenshot of said email, are attached as Exhibit 6 to this declaration.

18. ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

19. ███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████ adidas's forthcoming claims for damages arising from Ye's breaches, which include the destruction of a business line that generated billions of dollars in sales, will seek damages, the value of which far exceeds the value of claims previously asserted by Yeezy.

20. In light of public reports that JPMorgan Chase intended to close accounts associated with Ye and Yeezy, adidas took steps to protect its ownership interest in the ██████████████ in the possession of Respondents and in which adidas retains ownership, by filing an *ex parte* petition in the U.S. District Court for the Southern District of New York to attach up to $75 million of funds in Respondents' accounts in aid of arbitration.

21. adidas obtained an *ex parte* order of attachment on November 11, 2022 (the "**Order**"), and, through counsel, served the Respondents on November 15, 2022.

22. To further protect its interest in the ██████████████ by letter of November 15, 2022, adidas exercised its right to examine Yeezy's books and records █

6

███████████████████████████████████████████████ to determine whether Yeezy used ███████████ "in a way that is not in compliance" with the Agreement, including the requirement against commingling, improper disbursement, or unauthorized use. A true and correct copy of the audit letter dated November 15, 2022 is attached as Exhibit 7 to this declaration.

23. Respondents did not comply with their contractual obligations to make Yeezy's books and records available, and adidas did not receive a response from Ye or Yeezy to the November 15 audit letter. As such, adidas was unable to conduct an accounting and determine the full extent to which Yeezy commingled, disbursed, and/or misused the ███████████ in breach of the Agreement. Finally, on May 3, 2023, the Arbitrator ordered Yeezy to produce to adidas the books and records necessary to conduct the audit by May 17, 2023. The audit is now underway.

24. This Court vacated the Order on May 26, 2023. adidas has reason to believe that, absent the Order, the Arbitrator-ordered audit would be compromised and any arbitral award adidas may be entitled to would be rendered ineffectual. The Order prevented the dissipation of ███████████ that adidas knows to be held in accounts belonging to Yeezy and maintained by JPMorgan Chase in New York. As described below, adidas has good cause to believe that those assets continue to be at imminent risk of dissipation, warranting a renewed order of attachment.

25. adidas has a continuing need for the attachment in light of the continued risk of Ye's insolvency and the risk of dissipation of the ███████████ Given the scope of the claims being arbitrated, and the destruction of a business line that generated

billions of dollars in annual sales, adidas is monitoring all publicly available information regarding Ye's financial situation and ability to pay an award. To the best of my knowledge and belief, many of Ye's assets are illiquid and several of his assets are subject to liens.

26. Since the Order was issued last November, Ye has made multiple public comments demonstrating the significant risk that the ▮▮▮▮▮▮▮▮ would likely be dispersed if he had access to them—including his claim that he owes the Internal Revenue Service $50 million in unpaid taxes (and Yeezy reportedly owes the State of California over $600,000 in unpaid taxes), his execution of a divorce settlement agreement that reportedly requires him to pay $2.4 million in annual child-support payments, and his announcement of his now-abandoned 2024 presidential campaign. Additionally, and as publicly reported by many news outlets, Ye faces severe financial stress and possible insolvency resulting from various impending lawsuits and termination of lucrative business relationships (*e.g.*, termination of his partnership with GAP). Moreover, shortly after the Order was entered, Ye further diminished the value of his endorsement and commercial opportunities by continuing to make racist and incendiary statements, ranging from stating his admiration of Hitler on an appearance on The Alex Jones Show, claiming that Rosa Parks was a "plant," suggesting that Jewish people "are used by the Chinese" to control Black people, and posting a swastika on Twitter. Ye's comments on The Alex Jones Show may be viewed directly at:

https://www.banned.video/watch?id=63893df613d24b7697321bc0, last visited May 27,

2023. True and correct copies of public reporting on Ye's risk of insolvency and racist statements are attached as Exhibit 8 to this declaration.

27. Further underscoring Ye's evidently severe financial stress, several news outlets reported that Ye has left his $57 million Malibu mansion "to rot . . . given that no one is maintaining the structure," causing the walls to crumble. True and correct copies of public reporting on these matters are attached as Exhibit 9 to this declaration.

28. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Portland, Oregon, on this 29th day of May, 2023.

_____

Keith McIntire