UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | Misc. No.: 22-mc-320-VEC |
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | **NOTICE OF YEEZY, LLC AND YEEZY MARKETING, LLC'S MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** |
| | **FILED UNDER SEAL** |

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 64 and NYCPLR 6223,

Yeezy, LLC and Yeezy Marketing, LLC move the Court to vacate its Order Granting *Ex Parte*

Attachment (the "attachment order"). As explained in the Memorandum of Law filed herewith,

vacation of the attachment order is required by NYCPLR 6211(b) and NYCPLR 7502(c). This

motion is supported by the Declarations of Peter D. Hawkes and the Memorandum of Law

submitted herewith.

DATED: April 12, 2023

Respectfully submitted,

**ANGELI LAW GROUP LLC**

Peter D. Hawkes
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelilaw.com

*Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*

1

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing **NOTICE OF YEEZY, LLC AND YEEZY MARKETING, LLC'S MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** to be served on

Mark P. Goodman  
William H. Taft V  
Floriane Lavaud  
Debevoise & Plimpton, LLP  
919 Third Avenue  
New York, NY  10022

\_\_\_ By hand delivery  
X    By First-Class Mail delivery  
X    By e-mail  
\_\_\_ By overnight mail  
\_\_\_ By facsimile transmission

*Counsel for Petitioner adidas AG*

*With first-class postage prepaid and deposited in Portland, OR.

DATED: April 12, 2023

**ANGELI LAW GROUP LLC**

Peter D. Hawkes, OSB No. 071986  
121 SW Morrison Street, Suite 400  
Portland, OR 97204  
peter@angelilaw.com

*Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | Misc. No.: 22-mc-320-VEC <br><br> **DECLARATION OF PETER D. HAWKES IN SUPPORT OF YEEZY, LLC AND YEEZY MARKETING, LLC'S MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** <br><br> **FILED UNDER SEAL** |

I, Peter D. Hawkes, declare as follows:

1.      I am an attorney at the Angeli Law Group in Portland, Oregon, which represents Yeezy, LLC and Yeezy Marketing, LLC (collectively, "Yeezy") in this proceeding. I make this declaration in support of Yeezy's Motion to Vacate Order Granting *Ex Parte* Attachment. The statements contained herein are made upon my personal knowledge. If called as a witness, I would and could competently testify as set forth herein.

2.      Attached as Exhibit 1 is a true and correct copy of excerpts from adidas AG's Statement of Claims in the matter of *adidas AG v. Yeezy, LLC, et al.*, JAMS Ref. No. 5160000300.

3.      Attached as Exhibit 2 is a true and correct copy of the Notice of Commencement of Arbitration (without enclosures) in the matter of *adidas AG v. Yeezy, LLC, et al.*, JAMS Ref. No. 5160000300.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on April 12, 2023, in Camas, Washington.

_____
Peter D. Hawkes

CONFIDENTIAL

## DEMAND FOR ARBITRATION

ADIDAS AG,

Claimant,

v.

YEEZY, LLC; YEEZY MARKETING LLC;
YEEZY FOOTWEAR LLC; & YE, FORMERLY KNOWN AS KANYE
WEST,

Respondents.

## STATEMENT OF CLAIMS

CONFIDENTIAL

67.     As part of that same interview, Ye continued to perpetuate the false narrative that he was responsible for the Designs and that adidas stole them from him, stating that "I know the people at adidas are not going to have the best Thanksgiving.  I know that they are not going to have the best Christmas.  But if any way I can indemnify what they've done even though they st -- they took that IP."

### E.  Yeezy and Ye misused the Yeezy marketing funds

68.



adidas paid $50 million into Yeezy's account at First Bank of Wyoming and $25 million into Yeezy's account at JPMorgan Chase in New York, New York.

69.     Yeezy and Ye have not adhered to the strict rules for the maintenance of the Marketing Funds, including by failing to keep those funds in a segregated account and by improperly disbursing those funds into accounts held by Yeezy.  The Yeezy Marketing account established at JP Morgan Bank in 2022 for the purpose of receiving the Marketing Funds was, unbeknownst to adidas, set up as a "zero balance sweep account," meaning that, instead of being segregated, Marketing Funds deposited by adidas were immediately transferred to an account owned by Yeezy.  On information and belief, Ye and Yeezy mishandled virtually all of the Marketing Funds, including by using them for unauthorized purposes, making Yeezy liable for the return of ███████████ to adidas.

70.     As set forth above, on November 15, 2022, adidas exercised its right to examine Yeezy's books and records to determine whether Yeezy used Marketing Funds "in a way that is not in compliance" with the Agreement, including the above-referenced requirement against commingling, improper disbursement, or unauthorized use.[54]  Because adidas has not received a response from Yeezy, it is as yet unable to confirm the full extent to which Yeezy commingled, disbursed, and/or misused the Marketing Funds in violation of the Agreement.

### F.  adidas secures attachments in aid of arbitration

71.     Following the termination of the Agreement, and in light of public reports that JP Morgan Bank intended to close accounts associated with Ye and Yeezy, adidas took steps to protect its ownership interest in the Marketing Funds ███████ to Ye and Yeezy in the past 12 months.

72.     On November 11, 2022, adidas filed an *ex parte* petition in the U.S. District Court for the Southern District of New York ("SDNY") to attach up to $75 million of funds in Respondents' accounts.  That petition was granted and the order of attachment was served on JP Morgan on November 14, 2022, which has restrained $75 million of funds in accounts of Yeezy and its affiliates.

73.     Under the terms of the court's order, the attachment is to remain in place, preserving the status quo until adidas's rights to the Marketing Funds are resolved through this arbitration proceeding.

74.     Recent developments underscore the importance of the SDNY restraining order, and additional relief adidas intends to seek in this proceeding, to protecting adidas's interest in obtaining

---

[54]    Ex. T.



MARKOWITZ HERBOLD PC

Matthew A. Levin

DEBEVOISE & PLIMPTON LLP

Mark P. Goodman
William H. Taft V

*Attorneys for adidas*

21



## COMMENCEMENT OF ARBITRATION

NOTICE TO ALL PARTIES                                                      December 15, 2022

      RE:    **adidas AG vs. Yeezy, LLC, et al.**
                JAMS Ref. No. : 5160000300

Dear Parties:

This confirms the commencement of this arbitration as of the date of this letter. This arbitration shall be conducted in accordance with JAMS Comprehensive Rules.  Pursuant to the rules, no party may have *ex parte* communication with the Arbitrator.  Any necessary communication with the Arbitrator must be initiated through the case manager.

All arbitrations at JAMS are conducted in accordance with the attached Arbitration Administrative Policies regarding payment of fees, document retention, and limitations of liability.  Due to the nature of its business and size, JAMS may have administered other matters involving the parties, lawyers, or law firms in this case.  Enclosed is a summary of such cases administered within the last 5 years.

The parties are encouraged to mutually agree to an Arbitrator. If the parties are unable to mutually agree to an Arbitrator, then using the following list of Arbitrator candidates, each party may strike 2 name(s) and rank the remaining candidates in order of preference. The deadline for return of your strike list is close of business on **January 15, 2023** [Note: Strike lists should not be exchanged amongst the parties.]:

          Hiro Aragaki Esq. -- General Bio
          Hon. Candace Cooper (Ret.) -- General Bio
          Hon. William Downing (Ret.) -- General Bio
          Hon. David Garcia (Ret.) -- General Bio
          Hon. Faith Ireland (Ret.) -- General Bio
          Hon. Ann Jones (Ret.) -- General Bio
          Hon. Dean Lum (Ret.) -- General Bio
          Hon. Rise Pichon (Ret.) -- General Bio
          Hon. James Ware (Ret.) -- General Bio
          Hon. Rebecca Westerfield (Ret.) -- General Bio

Résumés and rules are available on our website, www.jamsadr.com, or by contacting me.

If a party fails to respond to the list of Arbitrator candidates by the deadline, that party shall be deemed agreeable to all the proposed candidates.  JAMS will then confirm the appointment of the Arbitrator and begin scheduling. If the parties are unable to agree on a date and time, the Arbitrator shall determine those issues.

The Arbitrator shall bill in accordance with the attached Fee Schedule.  Each party will be assessed a pro-rata share of JAMS fees and expenses, unless JAMS is notified otherwise by the Arbitrator or parties. JAMS will also administer the case consistent with JAMS Cancellation/Continuance policy. Pursuant to this policy, any party

who cancels or continues a hearing after the deadline to do so will be responsible for 100% of the professional fees for the reserved and unused time unless we can fill the time with another matter.

**Out of State Attorneys in California Arbitrations, please note**:

Section 1282.4 of the California Code of Civil Procedure details the prerequisites by which an out-of-state attorney may represent parties in non-judicial arbitrations occurring in California.  Please see www.calbar.ca.gov for additional information.

JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.

Contact me at 213-253-9706 or alieu@jamsadr.com if you have questions. We look forward to working with you.

Sincerely,

/s/ Anne Lieu

Anne Lieu
ADR Consultant

Enclosures

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing **DECLARATION OF PETER D. HAWKES IN SUPPORT OF YEEZY, LLC AND YEEZY MARKETING, LLC'S MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** to be served on

Mark P. Goodman                     ___ By hand delivery
William H. Taft V                   _x__ By First-Class Mail*
Floriane Lavaud                     _x_ By e-mail
Debevoise & Plimpton, LLP           ___ By overnight mail
919 Third Avenue                    ___ By facsimile transmission
New York, NY  10022

*Counsel for Petitioner adidas AG*

　　*With first-class postage prepaid and deposited in Portland, OR.

DATED: April 12, 2023

ANGELI LAW GROUP LLC

Peter D. Hawkes, OSB No. 071986
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelilaw.com

*Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | Misc. No.: 22-mc-320-VEC<br><br>**YEEZY, LLC AND YEEZY MARKETING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT**<br><br>**FILED UNDER SEAL**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................1

       A.    adidas obtained the attachment order on a substantively inadequate showing. ......1

       B.    adidas failed to comply with procedural deadlines to maintain the attachment

             order. ........................................................................................................2

III.   ARGUMENT ......................................................................................................2

       A.    Legal standard. ...........................................................................................2

       B.    The attachment order is no longer effective due to adidas's procedural defaults. .3

             1.    adidas did not move to confirm the attachment order within five days after

                   levy. ................................................................................................3

             2.    adidas failed to commence arbitration within thirty days. ...............................5

       C.    adidas failed to show that an arbitration award in its favor may be rendered

             ineffectual without provisional relief. .................................................................7

IV.    CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Eisenberg v. Citation-Langley Corp.*,
 92 A.D.2d 795, 459 N.Y.S.2d 788 (1st Dep't 1983) ................................................4

*Erickson v. Kidder Peabody & Co., Inc.*,
 166 Misc.2d 1, 630 N.Y.S.2d 861 (Sup. Ct. N.Y. Cty. 1995).................................8

*Founders Ins. Co. Ltd. v. Everest Nat'l Ins. Co.*,
 41 A.D.3d 350, 839 N.Y.S.2d 474 (1st Dep't 2007) ..............................................8

*Great White Whale Advertising, Inc. v. First Festival Prods.*,
 81 A.D.2d 704, 438 N.Y.S.2d 655 (3d Dep't 1981)................................................4

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund*,
 5527 U.S. 308 (1999) .............................................................................................6

*Shah v. Com. Bank Ob'Edinennyi Investitsionnyi Bank*,
 No. 09 CV 6121(HB), 2010 WL 743043 (S.D.N.Y. Mar. 4, 2010) ..................7, 8, 9

*Silivanch v. Celebrity Cruises, Inc.*,
 333 F.3d 355 (2d Cir. 2003) ...................................................................................6

*Sivault Sys., Inc. v. Wondernet, Ltd.*,
 No. 05 Civ.0890(RWS), 2005 WL 681457 (S.D.N.Y. Mar. 25, 2005)....................3

*Thadford Realty Co. v. L.V. Income Properties Corp.*,
 101 A.D.2d 814, 476 N.Y.S.2d 346 (2d Dep't 1984)..............................................4

**Statutes and Rules**

Fed. R. Civ. P. 64...............................................................................................2, 6

Fed. R. Civ. P. 65......................................................................................................6

NYCPLR 6201(1)......................................................................................................3

NYCPLR 6211(b)...........................................................................................1, 3, 4, 5

NYCPLR 6223(a)......................................................................................................2

NYCPLR 6223(b)......................................................................................................3

NYCPLR 7502(c)..............................................................................................*passim*

**Other Authorities**

6 Am. Jur. 2d Attachment and Garnishment § 12 ...........................................................................7

## I.  **INTRODUCTION**

Yeezy, LLC and Yeezy Marketing, LLC (collectively, "Yeezy") move the Court to vacate its Order Granting *Ex Parte* Attachment (the "attachment order") on two procedural grounds and one substantive ground. First, the Court must vacate the attachment order because adidas AG ("adidas") failed to move to confirm the attachment order within five days after levy on Yeezy's assets, as required by NYCPLR 6211(b), and failed to commence arbitration within thirty days of the granting of provisional relief, as required by NYCPLR 7502(c). Second, the Court must vacate the attachment order because adidas failed to show that any arbitration award it might obtain may be rendered ineffectual without such provisional relief, as required by NYCPLR 7502(c).

## II.  **STATEMENT OF FACTS**

### A.  adidas obtained the attachment order on a substantively inadequate showing.

The entire factual basis for adidas's petition for an *ex parte* attachment order was the supporting Declaration of Keith McIntire (the "McIntire Declaration" or "McIntire Decl."). According to the McIntire Declaration, adidas has a claim against Yeezy in an amount of up to $75 million, consisting of marketing funds that adidas transferred to Yeezy and that, upon termination of the parties' agreement, it was entitled to return in whole or in part. (McIntire Decl. ¶¶ 11-13.) $50 million of those funds were transferred to an account in Wyoming, while the other $25 million were transferred to an account in New York with JPMorgan Chase, N.A. ("JPMC"). (*Id.* ¶ 13.) McIntire speculated that it was "likely" that Yeezy later transferred the funds sent to the Wyoming account to one or more JPMC accounts. (*Id.* ¶ 14.) McIntire noted public reports that JPMC intended to terminate its relationship with Yeezy by closing its accounts and transferring any funds to Yeezy by check or transfer to an alternative financial

institution by November 21, 2022. (*Id.* ¶ 15.) McIntire speculated that attachment of those funds might be "difficult or impossible" in the jurisdiction to which those funds were transferred. (*Id.* ¶ 18.) McIntire also asserted that, after closure of the JPMC accounts, determining whether any funds had been spent for qualifying marketing purposes "may prove difficult or impracticable[,]" but he did not explain why that was so. (*Id.* ¶ 19.) Nowhere in the McIntire Declaration is there any assertion that Yeezy is insolvent; that it has deliberately liquidated or transferred its assets to another person or entity; that it is a shell with no appreciable assets; that it has historically failed to pay creditors; or that it has stated an intent to remove assets from the jurisdiction. (*See generally id.*)

### B. adidas failed to comply with procedural deadlines to maintain the attachment order.

The Court signed and filed the attachment order on November 11, 2022. By adidas's own admission, levy on Yeezy's assets occurred on November 14, 2022, when the attachment order was served on JPMC. (Declaration of Peter D. Hawkes in Support of Yeezy, LLC and Yeezy Marketing, LLC's Motion to Vacate Order Granting *Ex Parte* Attachment ("Hawkes Decl."), Ex. 1 at 2, ¶ 72.) adidas did not commence arbitration against Yeezy, however, until December 15, 2022—31 days later. (*See id.* Ex. 2 at 1.) And, as demonstrated by the Court's own docket in this matter, adidas never moved to confirm the attachment order.

### III.   ARGUMENT

#### A. Legal standard.

Pursuant to Fed. R. Civ. P. 64, adidas's attachment remedy is governed by the law of New York, the state in which this Court sits. NYCPLR 6223(a) provides that any person having an interest in the property or debt attached may move to vacate an attachment order at any time prior to the application of the property or debt to the satisfaction of a judgment. Upon such a

motion, the petitioner—not the movant—bears "the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." NYCPLR 6223(b).

**B. The attachment order is no longer effective due to adidas's procedural defaults.**

**1. adidas did not move to confirm the attachment order within five days after levy.**

NYCPLR 6211(b) provides that, with one inapplicable exception,[1] an *ex parte* order of attachment "shall provide that within a period not to exceed five days after levy, the plaintiff shall move, on such notice as the court shall direct to the defendant, the garnishee, if any, and the sheriff, for an order confirming the order of attachment.... If plaintiff fails to make such motion within the required period, the order of attachment and any levy thereunder shall have no further effect and shall be vacated upon motion."

---

[1] The exception is for *ex parte* orders of attachment on the ground set forth in NYCPLR 6201(1) (*i.e.*, that the defendant is a non-domiciliary of New York), which still require a subsequent motion for an order confirming the attachment, but with a different deadline. Because adidas obtained its attachment order pursuant to NYCPLR 7502(c), that ground is inapplicable here. *See* NYCPLR 7502(c) ("the sole ground for the granting of" provisional relief in connection with an arbitration proceeding is "that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief"); *Sivault Sys., Inc. v. Wondernet, Ltd.*, No. 05 Civ.0890(RWS), 2005 WL 681457, at *3 n. 1 (S.D.N.Y. Mar. 25, 2005) ("The grounds for attachment set forth in Section 6201 are, by the express terms of Section 7205(c), inapplicable to petitions for orders of attachment brought pursuant to that latter section.").

"Subdivision (b) of CPLR 6211 required the plaintiffs to make a motion, on notice, to confirm the order of attachment within a period not to exceed five days after levy. Where a timely notice to confirm is not made, as in this case, the order of attachment and the levy shall have no further effect[.]" *Thadford Realty Co. v. L.V. Income Properties Corp.*, 101 A.D.2d 814, 814, 476 N.Y.S.2d 346 (2d Dep't 1984); *see also Eisenberg v. Citation-Langley Corp.*, 92 A.D.2d 795, 788-89, 459 N.Y.S.2d 788 (1st Dep't 1983) ("The failure to make a timely motion to confirm is fatal under the section."); *Great White Whale Advertising, Inc. v. First Festival Prods.*, 81 A.D.2d 704, 706-07, 438 N.Y.S.2d 655 (3d Dep't 1981) (motion to vacate attachment order should have been granted because "the application to confirm was untimely"). Moreover, "[t]he time period of five days after levy within which the motion to confirm must be brought is the statutory maximum period. The court only has discretion to set a shorter period[.]" *Thadford Realty Co.*, 101 A.D.2d at 814. On a motion to vacate an attachment order for failure to make a timely motion to confirm, "the court [is] required to vacate the order of attachment[.]" *Id.* at 815.

Here, by adidas's own admission, JPMC was served with the attachment order on November 14, 2022. Yet no motion to confirm the attachment order was made by November 19, 2022, as required by NYCPLR 6211(b). Therefore, the attachment order and the levy thereunder "have no further force and effect[,]" and the Court is *required* to vacate the attachment order. *Id.*

adidas may argue that, despite the requirements of NYCPLR 6211(b), the attachment order provides that it is to remain in effect "unless otherwise amended or vacated by this Court." (Attachment order at 3.) But adidas cannot pull itself up by its bootstraps by relying in a defective attachment order that it drafted and presented to the Court for signature. NYCPLR 6211(b) states that an attachment order "shall provide" that a confirmation motion must be brought within five days. That is "the statutory maximum period"—the Court had no discretion

to waive that requirement. *See Thadford Realty Co.*, 101 A.D.2d at 814. Moreover, while it does not contain the express five-day requirement, the order does at least *contemplate* a motion to confirm—it provides that any levy under it "shall remain valid until 30 days after the date of the resolution by this Court (or the agreement of the parties) of any motion to confirm and/or motion to vacate this Order of Attachment..."[2] (Attachment order at 3-4.) There is simply no way for adidas to avoid the consequences of its failure to move to confirm the attachment order.

**2.  adidas failed to commence arbitration within thirty days.**

NYCPLR 7502(c) provides that, "[i]f an arbitration is not commenced within thirty days of the granting of the provisional relief, the order granting such relief shall expire and be null and void and costs, including reasonable attorney's fees, awarded to the respondent." Here, the court signed and filed the attachment order on November 11, 2022, and adidas admits that the attachment order "was served on JP Morgan on November 14, 2022[.]" (Hawkes Decl. Ex. 1 at 2, ¶ 72.) Yet adidas did not commence the arbitration against Yeezy until December 15, 2022—34 days after the attachment order was signed and filed, and 31 days after the levy occurred. Therefore, the attachment order is "null and void[,]" and Yeezy is entitled recover its reasonable attorney's fees incurred in connection with this motion.

---

[2] Even that provision, however, is inconsistent with the express terms of the rule, which provides that in the absence of a timely motion to confirm, the attachment and any levy thereunder "shall have no further effect..." NYCPLR 6211(b).

adidas may rely on the attachment order's *entry* date—November 16, 2022—to argue that it timely commenced the arbitration.[3] But that argument must fail, because the thirty-day period begins to run upon "the granting of the provisional relief[.]" *See* NYCPLR 7502(c). The Second Circuit has held that "the requirement that orders be entered in the docket is no more than 'a ministerial rule of procedure, intended to ensure that case dockets are properly maintained as useful sources of information for the litigants and court personnel[,]'" and that a district court order is "effective when it [is] signed and mailed to the parties," even if it has yet to be entered. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 364–65 (2d Cir. 2003) (citation omitted). Here, there can be no argument that the attachment order became effective any later than November 14, 2022—the day it was served on JPMC, and levy was thereby effected.

adidas may further attempt to avoid the nullification of the attachment order by arguing that, in addition to its authority under Rule 7502(c), the Court relied on its "inherent authority" to grant the attachment, which is not subject to the 30-day commencement rule. But that argument also fails. All of the "inherent authority" cases adidas cited in its brief involved *preliminary injunctions*—not attachments. (*See* Petitioner's Memorandum of Law in Support of Petitioner's *Ex Parte* Petition for Order of Attachment ("Pet. Mem."), at 13-15 & n. 3.) As the U.S. Supreme Court has held, "the general availability *of injunctive relief*…depend[s] on traditional principles of equity jurisdiction" that are "not altered" by Fed. R. Civ. P. 65. *See Grupo Mexicano de*

---

[3] That entry date is in Case No. 22-mc-317, the proceeding in which adidas asked the Court to permit *this* proceeding (Case No. 22-mc-320) to proceed under seal. Because Yeezy does not have access to the sealed docket in Case No. 22-mc-320, it does not know the date on which the attachment order was entered in this matter.

*Desarrollo S.A. v. Alliance Bond Fund*, 5527 U.S. 308, 318 (1999) (citation omitted; emphasis added). But the provisional remedy of *attachment* is available in federal court only pursuant to *Fed. R. Civ. P. 64*, which expressly limits a district court's authority to grant that remedy to the extent that it "is available…under the law of the state where the court is located," in the absence of any applicable federal statute. There is no federal attachment statute, and under New York law, "[a]ttachment is now regarded as in derogation of the common law and strictly a creature of statute. It is entirely a statutory remedy." N.Y. Jur. 2d Creditors' Rights § 22 (collecting cases); *see also* 6 Am. Jur. 2d Attachment and Garnishment § 12 ("The remedies of attachment and garnishment generally did not exist at common law…"). There is no authority supporting a federal court's "inherent authority" to issue an order of attachment. The only authority to do so lies in the New York Civil Procedure Law and Rules, which expressly provide that, due to adidas's failure to timely commence arbitration, the attachment order is "null and void." *See* NYCPLR 7502(c).

### C. adidas failed to show that an arbitration award in its favor may be rendered ineffectual without provisional relief.

A provisional remedy in connection with an arbitration may be granted "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." NYCPLR 7502(c). Here, adidas failed to make that required showing in its petition for the attachment order.

> Both state and federal courts in New York have found sufficient evidence that an award may be ineffectual and an attachment needed where the Petitioner demonstrates Respondents' potential insolvency, …deliberate liquidation and/or transference of assets to another, …that the company is a shell with no appreciable assets, historically failed to pay creditors, or has stated an intent to remove assets from the jurisdiction…. By contrast, courts have declined to order an attachment where Petitioner fails to show that Respondent may spirit away the money or simply lacks sufficient assets and may have no money when the award is rendered.

*Shah v. Com. Bank Ob'Edinennyi Investitsionnyi Bank*, No. 09 CV 6121(HB), 2010 WL 743043, at *3 (S.D.N.Y. Mar. 4, 2010) (citations omitted). The mere fact that it may be a "challenge" to enforce a judgment "is not the same as evidence that it will be 'rendered ineffectual' without the attachment." *Id.* Nor is the respondent's "refusal to pay the arbitral award on demand" sufficient, absent "evidence that the [respondent] has deliberately hidden its funds or attempted to evade enforcement by transferring assets." *Id.* Where the petitioner has not shown that the respondent is "financially insecure, in danger of insolvency, or otherwise lacks the assets to pay the judgment[,]" and there is no evidence of a plan to "squirrel away" or "deliberately hide" funds in an effort to "frustrate enforcement" of a judgment, attachment is not necessary to prevent an arbitral award from being "rendered ineffectual[.]" *Id.* at *3-*4; *see also, e.g.*, *Founders Ins. Co. Ltd. v. Everest Nat'l Ins. Co.*, 41 A.D.3d 350, 351, 839 N.Y.S.2d 474 (1st Dep't 2007) (denying provisional relief under NYCPLR 7502(c) where, "[b]y petitioner's own admission, respondents have more than $14 billion in assets; since petitioner is seeking some $42 million in the arbitration, it appears that respondents would be able to pay the award even if they draw down on the trust account"); *Erickson v. Kidder Peabody & Co., Inc.*, 166 Misc.2d 1, 5, 630 N.Y.S.2d 861 (Sup. Ct. N.Y. Cty. 1995) ("CPLR 7502(c) does not entitle petitioners to a guaranty that their awards following arbitration will be satisfied...Absent a showing that [the respondent] intends to compromise its assets to the detriment of petitioners, provisional relief pursuant to CPLR 7502(c) is not appropriate.").

    Here, adidas's evidence purporting to show that an arbitral award may be "rendered ineffectual" in the absence of attachment is insufficient under that standard. adidas relies entirely on the mere fact that JPMC has indicated that it intends to close Yeezy's accounts and transfer the funds therein back to Yeezy. (McIntire Decl. ¶ 15 & Ex. 6.) Obviously, *the bank's* decision to

terminate its relationship with Yeezy does not constitute evidence of a plan on *Yeezy's* part to transfer assets in an effort to hide them or render them unavailable to satisfy an arbitral award. There is no evidence that Yeezy intends to place the funds transferred by JPMC beyond adidas's reach. Nor would it be difficult for adidas, using ordinary discovery tools, to determine where those funds (or any other funds or assets held by Yeezy) had been placed.

adidas also does not convincingly explain its purported concern that, if the transferred funds were "comingled" with other funds in Yeezy's other accounts, "it would be more difficult if not impracticable to audit those accounts and determine which monies are owned by adidas." (Pet. Mem. at 12.) Subsequent transfer of the funds to a new account will not cause the historical evidence regarding "whether any marketing funds were used for qualifying purposes" (McIntire Decl. ¶ 19) to disappear. And money, of course, is fungible. If adidas obtains an arbitral award of $75 million for return of its marketing allocations to Yeezy (or some lesser amount if appropriate marketing expenditures are shown), it will be able to enforce that award against *any* of Yeezy's funds—not just those specifically traceable to its original allocations.

In short, adidas has offered no evidence that Yeezy is currently insolvent or that it has made any effort to conceal its assets or put them beyond adidas's reach in the event adidas obtains an arbitral award against Yeezy. Nor has adidas offered anything more than speculation that, in the absence of attachment, collection of any arbitral award would be more "challenging"—and even if it *had*, such a showing would still be insufficient to justify an attachment order. *See Shah*, 2010 WL 743043, at *3. Thus, even setting aside the insurmountable procedural hurdles it faces to the continued vitality of the attachment order, adidas has failed to show that it was ever entitled to such an order in the first place.

9

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should vacate the attachment order.

DATED: April 12, 2023

Respectfully submitted,

**ANGELI LAW GROUP LLC**

Peter D. Hawkes
121 SW Morrison Street, Suite 400
Portland, OR 97204
peter@angelilaw.com

*Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing **YEEZY, LLC AND YEEZY MARKETING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT** to be served on

Mark P. Goodman       ___ By hand delivery
William H. Taft V        X   By First-Class Mail delivery
Floriane Lavaud        X   By e-mail
Debevoise & Plimpton, LLP    ___ By overnight mail
919 Third Avenue       ___ By facsimile transmission
New York, NY 10022

*Counsel for Petitioner adidas AG*

   *With first-class postage prepaid and deposited in Portland, OR.

  DATED: April 12, 2023

         **ANGELI LAW GROUP LLC**

         Peter D. Hawkes, OSB No. 071986
         121 SW Morrison Street, Suite 400
         Portland, OR 97204
         peter@angelilaw.com

         *Attorneys for Yeezy, LLC and Yeezy Marketing, LLC*