UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | Misc. No.: _____<br><br>**FILED UNDER SEAL** |

**DECLARATION OF KEITH MCINTIRE
IN SUPPORT OF PETITION FOR AN *EX PARTE* ORDER OF ATTACHMENT**

I, Keith McIntire, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, declare as follows:

1. I am an attorney licensed to practice law in Oregon. I hold the title of Associate General Counsel for adidas America, Inc., a subsidiary of adidas AG ("**adidas**"). I submit this declaration on personal knowledge, upon review of certain of adidas' books and records, and in support of adidas's Petition for *Ex Parte* Order of Attachment (the "**Petition**"), and accompanying Memorandum of Law, each dated November 11, 2022. I am over the age of 18 and competent to testify.

2. adidas submits the Petition in order to prevent the dissipation of assets that it knows to be held in accounts belonging to Ye (formerly known as Kanye Amare West) and his companies, Yeezy, LLC, Yeezy Marketing LLC, and their affiliates (together with Ye, collectively "**Yeezy**") and maintained by JPMorgan Chase N.A. in New York. As described below, adidas has good cause to believe that those assets are at imminent risk of dissipation.

3. A true and correct copy of excerpts from the Licensing and Endorsement Agreement of January 1, 2017 between the adidas AG, Yeezy, and Ye, as amended (the "**Agreement**"), are attached as Exhibit 1 to this declaration.

4. The Agreement, as amended, provided the legal framework under which adidas and Ye, a California domiciliary, collaborated in order to promote and sell billions of dollars of footwear and apparel.

5. As referenced in the Agreement:

   a. adidas is a German entity with its primary US presence in Oregon.

   b. Yeezy, LLC is a Delaware limited liability company. Yeezy, LLC is referred to in the Agreement as "Lender."  Ex. 1, at 1.

   c. Yeezy Marketing LLC is a California limited liability company, though upon information and belief, Yeezy Marketing LLC is a Wyoming limited liability company.

   d. Yeezy Footwear LLC is a Wyoming limited liability company.

   e. To the best of my knowledge and belief, neither Yeezy, LLC, Yeezy Marketing LLC, nor Yeezy Footwear, LLC is registered to conduct business in New York.

   f. In his individual capacity, Ye is also a party to the Agreement and is required to substitute himself for Yeezy, LLC in the event that it ceases to exist or fails to perform.  Ex 1, at 9.

   g. Yeezy Footwear LLC and Yeezy Marketing are wholly owned, directly or indirectly, by Ye.  Ex. 1, at 14, 15.

      h.      To the best of my knowledge and belief, and as represented to adidas by Yeezy, LLC and Ye, Yeezy Marketing LLC and Yeezy Footwear LLC are and at all times during the term of the Agreement were affiliates of Yeezy, LLC, and the respective obligations and liabilities of Yeezy, LLC, Yeezy Marketing LLC and Yeezy Footwear were joint and several.  Ex. 1, at 20.

6.      The Agreement includes provisions by which adidas paid $100,000,000 per year to Yeezy Marketing LLC (the "**Marketing Funds**").  Ex. 1, at 21.

7.      The Marketing Funds were only for qualifying Marketing Purposes, as defined in the Agreement.  Ex. 1, at 12.  If the Agreement was terminated, for any reason, Yeezy, LLC and its affiliates were obligated to return any Marketing Funds provided in the last 12 months, less any sums spent on qualifying marketing expenses.  Ex. 1, at 19.



9.      The Agreement also provides that, to the extent they cannot be settled through mediation, "any disputes arising out of or relating to [the] Agreement or the breach, termination, enforcement, interpretation or validity thereof … shall be determined

by arbitration in Portland Oregon before one (1) arbitrator." Ex. 1, at 7-8. The "Arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules." Ex. 1, at 19. The applicable JAMS Rules provide that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." JAMS Rule 24(e), effective June 1, 2021.

10. In 2022, Ye engaged in a pattern of highly public and offensive public statements and other conduct that ███████████████████████████████ destroyed billions of dollars of brand value, and ultimately left adidas with no option but to terminate the Agreement. Ye's offensive conduct was well-documented in the press. True and correct copies of articles describing Ye's reprehensible and widely condemned public statements and other conduct are attached as Exhibit 2 to this declaration.

11. adidas formally terminated its agreement with Ye and his companies by letter dated November 5, 2022. A true and correct copy of that letter and adidas' related press release is attached as Exhibit 3 to this declaration.

12. As a result of that termination, Yeezy was obligated to return all marketing funds provided by adidas over the past 12 months, less any qualified expenditures. Ex. 1, at 19. Although adidas has demanded return of the Marketing Funds, that demand has been met with silence. Ex. 3.

13. adidas is aware that, of the $75 million of Marketing Funds transferred to Yeezy over the past 12 months, $50 million was paid to bank accounts in Wyoming,

while $25 million was paid to accounts in New York maintained by JPMorgan Chase, N.A. A true and correct copy of adidas' documentation of payments to Yeezy is included as Exhibit 4 to this declaration.

14. During the summer of 2022, Yeezy instructed adidas to send future transfers of Marketing Funds to an account maintained by Yeezy Marketing LLC in the New York branch of JPMorgan Chase. At the same time, adidas was informed by Yeezy of another account maintained at the same bank by Yeezy Footwear LLC. True and correct copy of ACH instructions for transfers to those accounts are attached as Exhibit 5 to this declaration. Upon information and belief, because it was apparent that at this time Yeezy was conducting its banking through JPMorgan Chase, it is likely that Yeezy moved any unspent Marketing Funds from its Wyoming bank account to the New York accounts.

15. At or around October 12, 2022, JPMorgan Chase reportedly informed Yeezy via email that it intended to terminate its relationship with Yeezy and Ye, including closing the accounts in which adidas' Marketing Funds reside, and making those funds payable to Yeezy via check or transfer to an alternate financial institution by a deadline of November 21, 2022. True and correct copies of public reporting on the email purportedly sent by JPMorgan Chase, including a screenshot of said email, are attached as Exhibit 6 to this declaration.

█ ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ Within 30 days of an order

of attachment issued by this Court, adidas intends to imitate arbitration with Yeezy pursuant to Section 46(B) of the Agreement.

17.  adidas' forthcoming claims for damages arising from Ye's breaches, which include the destruction of a business line that generated billions of dollars in sales, will seek damages the value of which far exceeds the value of claims previously asserted by Yeezy.

18. Absent an order of attachment from this Court, Yeezy will dissipate the marketing funds held in accounts at JPMorgan Chase on or before November 21, 2022, and in so doing may move those funds to a jurisdiction in which attachment will prove difficult or impossible.

19. If and when JPMorgan Chase closes Yeezy's accounts, it may prove difficult or impracticable to audit or inventory those accounts to determine whether any marketing funds were used for qualifying purposes.

20. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Portland, Oregon, on this 11th day of November 2022.

*Keith McIntire*

Keith McIntire

Exhibit 1



## Licensing and Endorsement Agreement

In consideration of the mutual promises, covenants and agreements expressed herein and for other good and valuable consideration, the receipt and adequacy of which the parties acknowledge, the parties have agreed to this Licensing and Endorsement Agreement (this "**Agreement**") as follows:

| | |
|---|---|
| **1. Parties**: | adidas AG ("adidas") and Yeezy, LLC, a Delaware limited liability company ("**Lender**") f/s/o Kanye Omari West ("**Artist**"). |
| **2. Prior Agreement**: |  |

1

01



24

02



34. Termination:

44

03



45

04



46

05





| | |
|---|---|
| **35. Publicity**: | Neither Lender, Artist nor adidas (or any member of the adidas Group) will issue, publish, disclose, or release any information (including without limitation any press release) regarding this Agreement (including but not limited to the terms hereof) or the expanded relationship herein without the express prior written consent of the other party. The parties shall mutually agree upon how and when to announce the parties entry into this Agreement. |
| **36. Notice**: | All notices or other communications provided for herein shall be given in writing by overnight delivery (e.g., Fed Ex or UPS) and shall be deemed given upon receipt, or refusal of receipt by Lender or Artist. Notice shall be made to Lender and Artist at the following |

47

06