**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | No: 22-mc-320 (VEC)<br><br><br>**FILED UNDER SEAL** |

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE ORDER GRANTING *EX PARTE* ATTACHMENT**

Mark P. Goodman (mpgoodman@debevoise.com)
William H. Taft V (whtaft@debevoise.com)
Floriane Lavaud (flavaud@debevoise.com)

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (Main Office Number)

*Counsel for Petitioner adidas AG*

Dated: May 9, 2023
        New York, NY

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    A.    The Parties ................................................................................................ 2

    B.    The Contractual Framework ......................................................................... 2

        1.    Marketing Funds ................................................................................ 3

        2.    Agreement to Arbitrate ....................................................................... 5

    C.    Ye's Pattern of Misconduct ......................................................................... 5

    D.    The Attachment............................................................................................ 8

    E.    Ye's Subsequent Conduct ........................................................................ 10

        1.    Mishandling of Marketing Funds.......................................................... 10

        2.    Continued Risk of Waste or Insolvency .................................................. 11

    F.    The Arbitration........................................................................................... 12

ARGUMENT ......................................................................................................................13

I.    The Arbitrator Is Determining Whether Yeezy Should Have Access to the Marketing Funds ...............................................................................................13

II.    The Court Should Maintain the Attachment ......................................................15

    A.    The Order Is Procedurally Sound ............................................................... 15

    B.    The Arbitration Was Commenced within 30 Days.............................................. 19

    C.    Any Award Issued in the Arbitration Would Be Rendered Ineffectual without the Attachment........................................................................ 20

III.    In the Event That the Order Is Vacated, adidas Requests the Opportunity to Be Heard on Request for a New Attachment ......................................................23

CONCLUSION...................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beller & Keller v. Tyler*,
 120 F.3d 21 (2d Cir. 1997)...........................................................................................18

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 910 F.2d 1049 (2d Cir. 1990).......................................................................................15

*County Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*,
 180 A.D.2d 468 (N.Y. 1st Dep't 1992).........................................................................20

*Dong v. Miller*,
 No. 16-cv-5836, 2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018)................................17

*E. Asiatic Co. v. Transamerican S.S. Corp.*,
 No. 86-cv-7580 (JFK), 1987 WL 17941 (S.D.N.Y. Sept. 29, 1987)........................14

*Erickson v. Kidder Peabody & Co., Inc.*,
 166 Misc. 2d 1 (Sup. Ct. N.Y. Cty. 1995) .................................................................23

*Espiritu Santo Holdings, LP v. L1bero Partners, LP*,
 No. 19-cv-3930 (CM), 2019 WL 2240204 (S.D.N.Y. May 14, 2019) .....................20

*Founders Ins. Co. Ltd. v. Everest Nat'l Ins. Co.*,
 41 A.D.3d 350 (1st Dep't 2001) .................................................................................23

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
 527 U.S. 308 (1999).....................................................................................................17

*Gucci America, Inc. v. Weixing Li*,
 768 F.3d 122 (2d Cir. 2014).........................................................................................16

*hamrock Power Sales, LLC v. Scherer*, No. 12-cv-8959,
 2016 WL 6102370 (S.D.N.Y. Oct. 18, 2016) .............................................................16

*Iraq Telecom Limited v. IBL Bank S.A.L.*,
 43 F.4th 263 (2d Cir. 2022). .......................................................................................18

*Kernisant v. City of New York*,
 225 F.R.D. 422 (E.D.N.Y. 2005).................................................................................18

*Marshall v. Marine Bulkheading, Inc.*,
 No. 19-cv-4741 (JMW), 2022 WL 1078225 (E.D.N.Y. Apr. 8, 2022) ....................18

*Mischon de Raya New York LLP v. Grail Semiconductor, Inc.*,
 No. 11-cv-04971(RJH), 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) .............16, 20

*Project Orange Assocs., LLC v. Gen. Elec. Int'l, Inc.*,
 872 N.Y.S.2d 857 (Sup. Ct. 2009) ............................................................. 15

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*,
 144 F. Supp. 2d 241 (S.D.N.Y. 2001) ......................................................... 17

*Serio v. Black, Davis & Shue Agency, Inc.*,
 No. 05-cv-15 (MHD), 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005) ..................... 16

*Shah v. Com. Bank Ob'Edinennyi Investitsionnyi Bank*,
 No. 09-cv-6121 (HB), 2010 WL 743043 (S.D.N.Y. Mar. 4, 2010) ..................... 22, 23

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
 No. 16-cv-6805 (JSR), 2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) ......................... 16

*Thadford Realty Co. v. L.V. Income Properties Corp.*,
 101 A.D.2d 814 (2d Dep't 1984) ................................................................... 18

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.*,
 131 F. Supp. 2d 341 (N.D.N.Y. 2001) ........................................................... 16

*United States ex rel. Rahman v. Oncology Assocs.*,
 198 F.3d 489 (4th Cir.1999) ....................................................................... 17

*Yahoo! Inc. v. Microsoft Corp.*,
 983 F. Supp. 2d 310 (S.D.N.Y. 2013) ........................................................... 14

**Rules**

Fed. R. Civ. Pro. 7 ..................................................................................... 18

Fed. R. Civ. Pro. 6(b) ................................................................................. 18

Fed. R. Civ. Pro. 64 .................................................................................... 9

JAMS Rule 24(e) ................................................................................... 5, 14

NY CPLR § 6211(b) .................................................................................. 19

NY CPLR § 7502 .................................................................................. 9, 19

## PRELIMINARY STATEMENT

On November 11, 2022, this Court exercised its legal and equitable authority to attach $75 million of Respondents' assets that are at presently at issue in an arbitration proceeding between the Parties.  Order Granting *Ex Parte* Attachment, November 11, 2022 (the "**Order**").  The Court issued the Order because "Petitioner has claims against Yeezy that are subject to arbitration, including for the return of unspent or improperly spent Marketing Funds"; because "it is probable that Petitioner will succeed on the merits with respect to its claims to return of the Marketing Funds"; and because "without provisional relief," "there is a risk that Yeezy will remove or dissipate assets," such that "the award to which Petitioner may be entitled may be rendered ineffectual."  *Id.* at 2.

The Court's Order was proper, and developments over the past five months confirm both its validity and the necessity of keeping it in place to protect the ongoing arbitration process.  As set forth below, Respondents received timely notice of the Order; adidas formally exercised its right under the Agreement to demand an inspection of Yeezy's books and records relating to the Marketing Funds; and adidas timely commenced the arbitration seeking, among other relief, the return of the Marketing Funds.  The continuing attachment of Respondents' assets is necessary to eliminate the risk that these assets are improperly dissipated, especially given Ye's deteriorating financial condition and the revelation that, prior to the attachment, Yeezy Marketing transferred the Marketing Funds from its J.P. Morgan Chase bank account into other Yeezy accounts in violation of the Parties' Agreement.  The audit process that will confirm adidas's entitlement to the funds is now underway, with the arbitrator recently having ordered Yeezy to produce the Marketing Funds-related books and records that it had refused, without justification, to provide for nearly six months.  The Court should maintain the status quo with respect to the attachment, pending resolution of the Parties' dispute in the arbitration.

For all these reasons, and as articulated below, this Court should deny Respondents'
attempt to overturn the Order and confirm that the attachment of $75 million of assets in
Respondents' possession remains proper.

## STATEMENT OF FACTS

### A.      The Parties

Petitioner adidas AG ("**adidas**") is a German entity with its primary U.S. presence in
Oregon.  Declaration of Keith McIntire dated November 5, 2022 ("**McIntire Decl.**"), ¶ 5.

Respondent Yeezy, LLC is a Delaware limited liability company not registered to do
business in New York.  *Id.*, ¶ 5.

Respondent Yeezy Marketing LLC is a limited liability company not registered to do
business in New York.  *Id.*, ¶ 5.  Yeezy Marketing LLC is listed as a California entity, but it
appears to currently be domiciled in Wyoming.  *Id.*, ¶ 5.  Yeezy Marketing LLC is jointly and
severally liable for Ye and Yeezy, LLC.  *Id.*, ¶ 5, Ex. 1, at 20.

Yeezy Footwear LLC is an affiliate of Yeezy, LLC, and is jointly and severally liable
with Yeezy, LLC.  *Id.*

Ye owns substantially all of Yeezy, LLC.  McIntire Decl., ¶ 5.  Ye wholly owns Yeezy
Marketing LLC and Yeezy Footwear LLC, either directly or through other entities that are
wholly owned by him.  *Id.*, Ex. 1, at 14–15.  Ye controls Yeezy, LLC, Yeezy Marketing LLC,
and Yeezy Footwear LLC (together with Ye, collectively referred to as "**Yeezy**").

### B.      The Contractual Framework

In 2016, adidas and Yeezy (collectively referred to as the "**Parties**") entered into the
2017 Agreement, which concerned the international sale and promotion of footwear and apparel
(the "**Products**").  *See, generally id.*, Ex. 1.  As relevant here, the 2017 Agreement was amended
by an Amendment on September 30, 2019; a January 10, 2020 Payment Confirmation; a

February 18, 2020 Payment Confirmation; and an August 15, 2020 Payment Confirmation Letter (jointly referred to as the "**Agreement**").  McIntire Decl., ¶¶ 3, 4; *see, generally* Ex. 1.  In his individual capacity, Ye is also a party to the Agreement and is required to substitute himself for Yeezy in the event the company ceases to exist or fails to perform.  McIntire Decl., ¶ 5, Ex. 1, at 9.

                    1.       Marketing Funds

The Agreement provided the framework for what ultimately became several billions of dollars of sales of the Products.  McIntire Decl., ¶ 4.  As part of that framework, the Agreement provided that adidas would provide marketing funds to Yeezy, which were to be used only for qualifying marketing purposes as defined in the Agreement (the "**Marketing Funds**").  McIntire Decl., ¶ 7, Ex. 1, at ▮▮▮▮▮▮▮▮▮▮▮.  The Marketing Funds did not belong to Ye or Yeezy, and upon termination of the Agreement for any reason, any unspent Marketing Funds provided over the prior 12 months were to be returned to adidas.  McIntire Decl., ¶ 7, Ex. 1, at



adidas has the right to examine Yeezy's and Yeezy Marketing's books and records related to compliance with the spending restrictions applicable to the Marketing Funds.  *Id.*, Ex. 1, at ▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████████

██████████████████████████. Any amounts determined by such audit to have been

improperly used must be reimbursed by Yeezy, ███████████████████████████████

████████████████████████████████████████████████

*Id*., Ex. 1, at ███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████.

████████████████████████████████████████████████

Second Declaration of Keith McIntire ("**Second McIntire Decl.**"), ¶ 2.  In 2022 alone, adidas

provided $75 million in Marketing Funds to Yeezy.  McIntire Decl., ¶ 13, Ex. 4.  Petitioner

understands that Yeezy and its affiliated entities hold bank accounts at JPMorgan Chase Bank,

N.A. (the "**Garnishee**") in New York, as well as in Wyoming.  McIntire Decl., ¶ 13; *id.* ¶ 14, Ex.

5, at 1–2.  Of the $75 million in Marketing Funds adidas provided in 2022, $50 million were paid

to bank accounts held by Yeezy Marketing LLC in Wyoming and, $25 million were paid to the

Garnishee account in New York.  McIntire Decl., ¶ 13, Ex. 4, at 1; *id.* ¶ 14, Ex. 5, at 1–2.

Based on the contractual requirement that the Marketing Funds be held in a segregated

account, and the instructions from Yeezy to direct █████████████████ the Marketing Funds to

an account at the Garnishee, adidas has reason to believe that some or all of the $50 million from

the Wyoming accounts have been transferred to the Garnishee.  McIntire Decl., ¶ 14; Ex. 5, at 1–

2; *see* Ex. 1, at Third Amendment ¶ 6(c) ("The Marketing Fund may not be: (i) commingled with

funds of Lender, other Lender or Artist affiliates or Artist, (ii) used (in whole or in part) to

satisfy, serve as security for or otherwise guarantee any obligations of Lender, Lender or Artist

affiliates or Artist; or (iii) assigned by the Marketing Entity. ███████████████████████

█████████████████████████████████████

2.      Agreement to Arbitrate

The Parties agreed that "any disputes arising out of or relating to [the] Agreement or the

breach, termination, enforcement, interpretation or validity thereof . . . shall be determined by

arbitration in Portland, Oregon before one (1) arbitrator." *Id.*, Ex. 1, at 2017 Agreement § 46(B).

The "Arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration

Rules and Procedures and in accordance with the Expedited Procedures in those Rules." *Id.*,

Ex. 1, at August 15, 2020 Payment Confirmation ¶ 2(j).  The applicable JAMS Rules provide

that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed

incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."  JAMS Rule

24(e), effective June 1, 2021.

**C.      Ye's Pattern of Misconduct**



In 2022, Ye made a series of highly public and

offensive statements and engaged in reprehensible conduct that violated the terms of the

Agreement, destroyed billions of dollars of brand value, ████████████████████████

██████████████      McIntire Decl., ¶ 10; *id.*, ¶ 11, Ex. 3, at 1–3.

For example, on October 3, 2022, at a high-profile fashion show for his "Yeezy Season 9" fashion line, Ye and several other participants wore t-shirts designed by Ye with the white-supremacist slogan "White Lives Matter."  McIntire Decl. ¶ 10, Ex. 2, at 1, Vanessa Friedman, There Is No Excuse for Ye's 'White Lives Matter' Shirt, NY Times (Oct. 4, 2022).  In response to Ye's conduct, among other issues, adidas publicly announced that the company was placing its partnership with him "under review."  Id., at 5, adidas puts Kanye West Yeezy deal under review, BBC (Oct. 7, 2022); Id., at 9, Ross Dwyer, adidas Has Placed the Yeezy Partnership "Under Review", Hypebeast (Oct 6, 2022).

On October 6, 2022, and in response to adidas's decision, Ye posted on Instagram: "FUUUUUUCK ADIDAS I AM ADIDAS RAPED AND STOLE MY DESIGNS."  Id., at 13, Marisa Dellatto, Kanye West's Antisemitic, Troubling Behavior – Here's Everything He's Said in Recent Weeks, Forbes (Nov. 7, 2022).  In addition, on October 7, 2022, Ye posted to Instagram several screenshots of a text message exchange with music impresario Sean J. Combs, a.k.a. Diddy, in which Ye told Diddy: "Ima use you as an example to show the Jewish people that told you to call me that no one can threaten or influence me."  Id., at 14, 21; see id., at 20, Andrew Limbong, Twitter Follows Instagram in restricting Ye's account after antisemitic posts, NPR (October 10, 2022).

Later that weekend, Ye posted on his then-31-million-follower Twitter account: "[W]hen I wake up I'm going death con 3 On JEWISH PEOPLE" and "You guys have toyed with me and tried to black ball anyone whoever opposes your agenda."  Id., at 21.  This tweet has been widely condemned and was covered by the mainstream media.  Twitter unilaterally deleted the tweet and locked Ye's account for violating its terms of service.  Then, on October 15, 2022, in an appearance on the popular "Drink Champs" internet show and podcast, Ye made several

additional and even more extreme racist and antisemitic comments.  Alongside a litany of

conspiracy theories and other antisemitic statements, Ye declared: "I can literally say antisemitic

shit and they can't drop me.  I can say antisemitic things and adidas can't drop me.  Now

what? . . . That's the position . . . Ima hold my ground.  I'm not backing down."  *See* YouTube,

*Kanye West Interview on Drink Champs of October 2022*, last accessed May 8, 2023,

https://www.youtube.com/watch?v=7Rt4At58Mrc (at 2 hr. 39 min. mark) (Ye's appearance was

initially accessible on the Drink Champs YouTube channel at

https://www.youtube.com/watch?v=-ZmbP5vIbyk, but has since been removed at the time of this

statement due to the public outcry in response to Ye's comments).



the adidas Board announced that it would terminate the Agreement on October 25,

2022.  McIntire Decl., ¶ 10, Ex. 3, at 3.  That announcement set in motion a contractual

notification and consultation provision, which culminated with adidas sending a termination

letter to Ye and Yeezy on November 5, 2022 (the "**Termination Letter**"), exercising its

termination rights pursuant to Section 34(A)(vii) of the Agreement.  McIntire Decl., ¶ 10, Ex. 3,

at 1; *see id.*, ¶ 7, Ex. 1, at 2017 Agreement § 34(A)(vii)(a) and (b)

Pursuant to the self-executing

language in paragraph 4 of the August 15, 2020 Payment Confirmation, Yeezy and its affiliates

were required to return to adidas an amount of its funds equal to the total amount of Marketing

Fund payments made by adidas to Yeezy, LLC in the previous 12 months—which amounts to $75 million less any qualifying marketing expenditures made by Yeezy during this time period that Yeezy can demonstrate complied with the Agreement. *Id.*, ¶ 7; Ex. 1, at August 15, 2020 Payment Confirmation ¶ 4. adidas requested the return of these funds in the Termination Letter but has not received any response from Respondents. *Id.*, ¶¶ 11, 12; Ex. 3, at 1–2.

In an email apparently sent by the Garnishee that was leaked to the press on October 12, 2022, and as reported by many news outlets, the Garnishee chose to end its relationship with Yeezy and its affiliated entities. *Id.*, ¶ 15, Ex. 6, at 12; *see also* Ex. 6, at 1, Tom Skinner, Kanye West responds after JPMorgan Chase severs ties with him, NME (Oct. 13, 2022); *id.*, at 8, Laura Snapes, Kanye West: bank JP Morgan Chase cuts ties with rapper, The Guardian (Oct. 14, 2022), *id.*, at 10, Ken Sweet, Banking breakup between Ye, JPMorgan planned for weeks, APNews (Oct. 14, 2022). On or after November 21, 2022, the Garnishee intended to close any of Ye or Yeezy's open accounts, and after deduction of any permissible service charges and pending transactions, remit all remaining funds in the form of a check delivered to Ye or Yeezy or transfer them to another financial institution indicated by Ye or Yeezy. Ex. 6, at 12. Under the Agreement, the Marketing Funds may not be disbursed to Ye or Yeezy, LLC. Ex. 1, at Third Amendment ¶ 6 (c) ████████████████████████████████████ ██████████████████████████ *see* McIntire Decl., ¶¶ 7, 12.

### D.   The Attachment

In light of public reports that the Garnishee intended to close accounts associated with Ye or Yeezy, adidas took steps to protect its ownership interest in those Marketing Funds by filing an *ex parte* petition in the U.S. District Court for the Southern District of New York to attach up to $75 million of funds in Respondents' accounts in aid of arbitration. Second McIntire Decl., ¶ 3. adidas requested relief under Federal Rule of Civil Procedure 64, which permits remedies

allowed by the New York Civil Practice Law & Rules (the "**NY CPLR**"), and pursuant to the Court's equitable authority to preserve adidas's interest in its own property—the Marketing Funds.  Petitioner's Memorandum of Law in Support of Motion for *Ex Parte* Order of Attachment, at 9–15.

On November 11, 2022, the Court granted adidas's *ex parte* petition.  Order, at 3.  In the Order, the Court made it clear that it was granting relief both "pursuant to Rule 64" and "under New York Civil Practice Law and Rule," as well as pursuant to its "equitable authority, independent of its authority under NY CPLR § 7502."  Order, at 2.  The Court also ordered that, in the event that the Order was modified or vacated, it would "remain valid [for] 30 days," giving adidas time to protect its property.  Order, at 3–4.  Additionally, the Court directed adidas to provide "service of this order . . . and all supporting documents" to "Respondents within ten days" and required that adidas post a bond of $75,000 no later than November 15, 2022.  Order, at 4.

Consistent with the Order, adidas served Ye and Yeezy on November 15, 2022, and posted the required bond on the same day.  Second Declaration of William H. Taft V ("**Second Taft Decl.**"), ¶¶ 2, 3, Ex. D, at 1.  adidas also served the Order on the Garnishee, which has restrained $75 million of funds in the accounts of Yeezy and its affiliates.  Second Taft Decl., ¶ 2, Ex. D, at 3.  adidas does not have access to the funds subject to the Order; rather, the attachment merely freezes the relevant JP Morgan accounts, preventing Yeezy's use or dissipation of the Marketing Funds.  Second McIntire Decl., ¶ 6.

Despite being on notice of the arbitration since at least December 2, 2022, Ye did not appear in the arbitration until January 14, 2023.  Second Taft Decl., ¶ 7.  And Ye did not appear before this Court until April 12, 2023, nearly five months after receiving notice of the Order.

### E.     Ye's Subsequent Conduct

#### 1.     Mishandling of Marketing Funds

By all indications, Yeezy mishandled a substantial amount ███████████████████

████████████ and virtually all of the $75 million paid in 2022, including by disbursing,

commingling, or using the funds for unauthorized purposes.  Notably, the Yeezy Marketing

account established at JP Morgan in 2022 for the purpose of receiving the Marketing Funds was,

unbeknownst to adidas, set up as a "zero balance sweep account," meaning that, instead of being

segregated as required under the Agreement, the Marketing Funds deposited by adidas were

transferred from the Yeezy Marketing account to an account owned by Yeezy LLC on a daily

basis.  Second Taft Decl., ¶ 4.  Underscoring this issue, on November 21, 2022, Ye publicly

stated that the Order, which restrained up to $75 million of funds intended to be used only for

marketing purposes, prevented him from making personal payments using Apple Pay—further

demonstrating Ye's unwillingness to abide by the terms of the Agreement.  *See* X17onlineVideo,

*EXCLUSIVE – Ye Sings In Prayer, Says Adidas Froze $75M In His Accounts*, November 21,

2022, https://www.youtube.com/watch?v=Vn0vshvON5U (in which Ye states that the

restraining order had blocked an attempted purchase using Apple Pay).

By letter of November 15, 2022, adidas exercised its right to examine Yeezy's books and

records ████████████████████████████████████ to determine

whether Yeezy used the Marketing Funds "in a way that is not in compliance" with the

Agreement, including the requirement against commingling, improper disbursement, or

unauthorized use.  Second McIntire Decl., ¶ 7; Ex. A; *see also* Ex. 1, at Third Amendment ¶ 6(e).

But for nearly six months, adidas received no response from Yeezy.  As a result of this refusal by

Yeezy to honor its contractual obligation, adidas has been unable to perform an audit or confirm

the full extent to which Yeezy commingled, disbursed, and/or misused the Marketing Funds in breach of the Agreement.  Second McIntire Decl., ¶ 8.

           2.        Continued Risk of Waste or Insolvency

     Many of Ye's assets are illiquid, and several of his assets are subject to liens.  Second McIntire Decl., ¶ 9.  Since the Order, Ye has made multiple public comments highlighting his severe financial stress and demonstrating the significant risk that the Marketing Funds would likely be dispersed if he had access to them—including his claim that he owes the Internal Revenue Service $50 million in unpaid taxes, his execution of a divorce settlement agreement that reportedly requires him to pay $2.4 million in annual child-support payments, and his announcement of his now-abandoned 2024 presidential campaign.  Second McIntire Decl., ¶ 10, Ex. B, at 1–2, Pete Syme, <u>Kanye West says Adidas sued him for $275 million and froze all his bank accounts in a video announcing his 2024 presidential campaign</u>, Business Insider (Nov. 25, 2022); Ex. B, at 3–4, Ariel Zilber, <u>Kanye West said IRS froze his accounts because he owes $50M in taxes</u>, NY Post (Nov. 29, 2022); Ex. B, at 8, <u>Kim Kardashian gets $200,000 monthly child support settlement from Ye</u>, Reuters (Nov. 29, 2022); Ex. B, at 11, <u>Kanye West Still Stuck in 'Donda 2' Battle Amid His Lawyers Plan to Drop Him – But There's a Silver Lining</u>, Music Times (Nov. 1, 2022); Ex. B. at 13, <u>Kanye West could face financial crisis within months</u>, Page Six (Oct. 30, 2022); Ex. B, at 17, <u>Kanye West And Yeezy Sued For 275K By Ex Adidas Employee</u>, Vibe (Mar. 31, 2023).

     Moreover, shortly after the Order was entered, Ye further diminished the value of his endorsement and commercial opportunities by continuing to make racist and incendiary statements, ranging from stating his admiration of Hitler on an appearance on The Alex Jones Show, claiming that Rosa Parks was a "plant," suggesting that Jewish people "are used by the Chinese" to control Black people, and posting a swastika on Twitter.  Second McIntire Decl.,

¶ 10, Ex. B, at 21, Nikki McCann Ramirez, <u>Kanye to Alex Jones: 'I Like Hitler'</u>, Rolling Stone
(Dec. 1, 2022); Ex. B, at 24, Cole Blake, <u>Kanye West Claims Rosa Parks Was a "Plant"</u>,
HotNewHipHop (Dec. 12, 2022); Ex. B, at 29, John Yoon, <u>Kanye West Is Suspended From
Twitter After Posting a Swastika</u>, New York Times (Dec. 2, 2022); *see also* The Alex Jones
Show, *Kanye West Interview*, last accessed May 8, 2023, https://www.banned.video/watch?id=
63893df613d24b7697321bc0.  As these bizarre statements indicate, Ye has continued the same
pattern of misconduct that ████████████████████████████████ and its petition to
this Court to prevent the dissipation of the Marketing Funds pending resolution of the dispute
through arbitration.

### F.    The Arbitration

adidas commenced the arbitration by filing its Demand for Arbitration with JAMS on
December 2, 2022—21 days after the Order was issued.  Second Taft Decl., ¶ 6, Ex. F, ¶ 9.
JAMS "confirm[ed] the commencement of the arbitration" on December 15, 2022.  *Id.*  Despite
being served with adidas's Demand for Arbitration on December 2, 2022 by registered mail and
on December 6, 2022 by email, which again put Yeezy on notice of the existence of the
arbitration and the Order, Ye did not appear in the arbitration until January 14, 2023, nearly a
month and a half later.  *Id.*, ¶ 7.  On February 1, 2023, the Honorable Judge Rebecca Westerfield
was appointed as arbitrator by mutual agreement of the Parties (the "**Arbitrator**").  *Id.*, ¶ 8.  On
February 13, 2023, adidas and Respondents stipulated that "Claimant filed its Demand for
Arbitration on or about December 2, 2023."  *Id.*, ¶ 9, Ex. G, at 1.  The arbitration is now
underway; the Preliminary Conference occurred on April 25, 2023.  *Id.*, ¶ 10.  During the
Preliminary Conference, adidas indicated its intent to request from the Arbitrator an order
requiring Respondents to preserve and immediately make available to Claimant all accounting
books and records relevant to an accounting of the Marketing Funds, as it is entitled to do so

under the Agreement.  Second Taft Decl., ¶ 10; McIntire Decl., ¶ 3, Ex. 1, ████████████

████ adidas did so, and during a conference held on May 3, 2023, the Arbitrator ordered

Yeezy to make available to Claimant all such books and records by May 17, 2023.  Second Taft

Decl., ¶ 10; Second McIntire Decl., ¶ 8.

## ARGUMENT

Yeezy erroneously contends that the Order should be vacated because (*i*) adidas did not

move to confirm the attachment; (*ii*) adidas did not commence the arbitration within 30 days; and

(*iii*) any award issued in adidas's favor was not likely to be rendered ineffectual without the

Order.  Respondents' Memorandum of Law in Support of Motion to Vacate, April 12, 2023

("**Respondents' Memorandum**"), at 2–9.  As demonstrated below, Yeezy is wrong on all

counts.  Furthermore, and as a preliminary matter, adidas' entitlement to return of the Marketing

Funds is being resolved by the Arbitrator and need not be decided by the Court at this time.

## I.   The Arbitrator Is Determining Whether Yeezy Should Have Access to the Marketing Funds

In its Demand for Arbitration, adidas has requested, *inter alia*, an accounting of Yeezy's

use (or misuse) of the ████████████████████ provided by adidas—including the $75

million provided in 2022 ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Second Taft Decl., ¶ 5, Ex. E, at 21.

The Arbitrator has the authority to grant provisional relief, *see* JAMS Comprehensive

Rules and Procedures § 24(e) (The Arbitrator "may grant whatever interim measures are deemed

necessary, including injunctive relief and measures for the protection or conservation of

property" and "[s]uch interim measures may take the form of an interim or Partial Final

13

Award."); *see also E. Asiatic Co. v. Transamerican S.S. Corp.*, No. 86-cv-7580 (JFK), 1987 WL 17941, at *3 (S.D.N.Y. Sept. 29, 1987) (confirming an interim award because to do otherwise would render the award "a futile exercise of the arbitrator's powers"); *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 316–17 (S.D.N.Y. 2013) (confirming the authority of an emergency arbitrator to grant a preliminary injunction), and has already ordered Yeezy to make available to adidas, no later than May 17, 2023, all books and records relevant to an audit of the Marketing Funds.  Second Taft Decl., ¶ 10.  Once the amount of unspent and misspent Marketing Funds is ascertained, adidas intends to seek a further order directing Yeezy to return those funds to adidas.

It would be equitable for the Court to maintain the status quo and prevent any dissipation of assets until the audit is completed and the Arbitrator selected by the Parties has resolved any disputes concerning the use and ownership of the Marketing Funds.  Order, at 2 (exercising its equitable authority); *see, e.g.*, *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990) ("Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute.") (quotation marks omitted); *Project Orange Assocs., LLC v. Gen. Elec. Int'l, Inc.*, 872 N.Y.S.2d 857, 862 (Sup. Ct. 2009) ("Without encroaching on the arbitrator's exclusive domain, it is clear that the equities present in this case favor Plaintiff, at least insofar as withholding the injunctive relief sought might result in" the destruction of the assets at issue in the arbitration).

Conversely, given that Ye had, for over five months, ignored the request adidas made on November 15, 2022 and refused to provide Yeezy's Marketing Funds-related books and records as required under the Agreement, Second McIntire Decl., ¶ 7; Ex. A, at 1–2, and given the evidence that Ye is likely to dissipate the attached assets before the Arbitrator has had an

opportunity to rule regarding the ownership of the Marketing Funds, it would be highly prejudicial to adidas for the Court to permit Ye access to the attached funds.

## II.    The Court Should Maintain the Attachment

### A.    The Order Is Procedurally Sound

In an attempt to sidestep the overwhelming evidence of Yeezy's improper retention of the unspent Marketing Funds that belong to adidas and likelihood that Yeezy will dissipate those funds and severely prejudice the ongoing Arbitration, Respondents erroneously contend that the Order is procedurally flawed.  Respondents' Memorandum, at 3.  They argue that the Court's power to attach Yeezy's assets comes only from Rule 64, which, they contend, incorporates NY CPLR 6211(b)'s requirement that a motion to confirm the attachment be served shortly after the attachment.  Respondents' Memorandum, at 2–3.  Yeezy is wrong.

On its face, the Order states that adidas has "demonstrated sufficient grounds for this Court to exercise its equitable authority, independent of its authority under CPLR § 7502, to effectuate an *ex parte* attachment over specific funds in which Petitioner holds an interest[.]"  Order, at 2.  There is no doubt that this Court had the power to exercise its equitable authority and courts have routinely done so.  *See Shamrock Power Sales, LLC v. Scherer*, No. 12-cv-8959, 2016 WL 6102370, at *4 (S.D.N.Y. Oct. 18, 2016) (explaining that this Court has equitable authority to attach assets "in aid of the recovery sought in equity.") (quotation marks omitted); *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014) (holding that the district court had equitable authority to issue prejudgment asset-freeze injunction); *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16-cv-6805 (JSR), 2017 WL 737315, at *4 (S.D.N.Y. Feb. 6, 2017) (exercising equitable power to freeze assets); *Mischon de Raya New York LLP v. Grail Semiconductor, Inc.*, No. 11-cv-04971(RJH), 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28, 2011) (confirming order of attachment based on possible insolvency);

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 350 (N.D.N.Y. 2001) (holding that the court could issue preliminary injunction freezing assets with respect to fraudulent-conveyance claims seeking equitable relief); *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05-cv-15 (MHD), 2005 WL 3642217, at *6–8 (S.D.N.Y. Dec. 30, 2005) (granting preliminary injunction asset freeze upon the finding that plaintiff asserted an equitable interest in specific funds arising out of the terms of the agency contract which specified that certain funds were to be held in a separate account and which belonged to plaintiff).

Contrary to those decisions, Yeezy argues that "the provisional remedy of attachment is available in federal court only pursuant to [Federal Rule of Civil Procedure 64]" and, therefore, the court had no authority to attach the Marketing Funds on an equitable basis.  Respondents' Memorandum, at 6–7.  Yeezy relies solely on *Grupo Mexicano* to claim that district courts cannot use their equitable authority to issue prejudgment attachment, but *Grupo Mexicano* concerned a general attachment to protect a possible future judgment.  *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) (holding that a district court cannot enter preliminary injunctions **solely** to preserve assets to satisfy a party's legal claims for money damages) (emphasis added).  Here, the Order protects an equitable interest in the Marketing Funds.  The Marketing Funds were never Yeezy's property but were provided by adidas for the sole purpose of marketing the Products.  McIntire Decl., ¶ 7, Ex. 1, at Third Amendment ¶ 6(c).

Even after *Grupo Mexicano*, federal courts consistently recognize that district courts retain the authority to issue a prejudgment asset freeze where plaintiffs seek both legal and equitable relief, or retain an equitable interest in the funds or assets at issue.  *See Dong v. Miller*, No. 16-cv-5836, 2018 WL 1445573, at *7 (E.D.N.Y. Mar. 23, 2018) (a "court retains the authority to issue a prejudgment asset freeze . . . where the plaintiff is pursuing a claim for final

equitable relief, and the preliminary injunction is ancillary to the final relief[.]"); *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) (quoting *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 494–98 (4th Cir.1999)) ("[C]ourts since *Grupo Mexicano* have found that where plaintiffs seek both equitable and legal relief in relation to *specific* funds, a court retains its equitable power to freeze assets.").  The provisions of the NY CPLR cited by Yeezy do not purport to limit the Court's power to grant equitable relief, nor could they.

Exercising its equitable authority, the Court ordered that adidas serve the Order on Respondents "within 10 days" of November 11, 2022.  Order, at 4.  In so doing, the Court ensured that Yeezy had actual notice of the Order within the 10-day period described in the NY CPLR, and would have an opportunity to be heard as soon as Yeezy appeared before the Court.  This is the primary purpose of the NY CPLR's confirmation procedure, as Yeezy's own authority confirms.  *See, e.g.*, *Thadford Realty Co. v. L.V. Income Properties Corp.*, 101 A.D.2d 814, 814 (2d Dep't 1984) (noting that the party against whom attachment was sought was not provided notice when the confirmation was sought).  adidas served Yeezy, as required by the Order, on November 15, 2022—four days after the Order was issued—thereby fully complying with the Order.  Yeezy has now been on notice for nearly six months and has not provided any valid basis demonstrating that it was beyond the scope of the Court's equitable powers to craft the Order as it did.

Moreover, even if the Court had acted solely under Rule 64 and the NY CPLR (which it did not), the 10-day period would not be binding on this Court, as it is a state law procedural rule, as opposed to the substantive remedy of attachment.  Yeezy fails to account for the fact that federal courts are not bound by deadlines for pleadings and motions imposed by state law, even

when providing state-substantive remedies.  *See Beller & Keller v. Tyler*, 120 F.3d 21, 24–26 (2d

Cir. 1997) (holding that a deadline of 30 days to file an answer imposed by NY CPLR § 308(4)

was inapplicable in federal court).  To the contrary, federal courts have broad powers to control

their schedule and impose or modify deadlines for motions.  *See* Fed. R. Civ. Pro. 6, 7

(describing the Court's broad powers, including the power to extend or modify dates or

deadlines); *see also Marshall v. Marine Bulkheading, Inc.*, No. 19-cv-4741 (JMW), 2022 WL

1078225, at *2 (E.D.N.Y. Apr. 8, 2022) (Rule 6(b) "is a rule of general application giving

discretion to the trial court to enlarge time limits whether before or after they have expired.");

*Kernisant v. City of New York*, 225 F.R.D. 422, 431 (E.D.N.Y. 2005) (same).  Recent case law in

the Second Circuit supports this principle.  In *Iraq Telecom Limited v. IBL Bank S.A.L.*, the

Second Circuit affirmed an attachment in which the motion to confirm was filed outside of the

10-day window and even reversed the district court's reduction of the attachment from $100

million to $3 million.  43 F.4th 263, 276 (2d Cir. 2022).

Equity favors maintaining the Order.  Respondents were in no way prejudiced by the lack

of a confirmation proceeding—they were provided with actual notice within 10 days (the same

period prescribed by the NY CPLR, contrary to Yeezy's erroneous contention), though neither

Ye nor any of his related entities appeared before this Court until April 12, 2023.  *See* NY CPLR

§ 6211(b) (providing a 10-day period).  The Parties are now in the process of resolving their

dispute in the arbitration, and adidas's $75 million in Marketing Funds have been preserved by

the Court's Order.  There is no reason to disturb the Court's equitable Order, which protects

adidas's property from dissipation and ensures that an arbitral award issued in favor of adidas

will not be rendered ineffectual.

**B.      The Arbitration Was Commenced within 30 Days**

Yeezy argues, without legal or factual basis, that adidas failed to commence arbitration within 30 days of the attachment.  Respondents' Memorandum, at 5.  Once again, Yeezy is wrong.

It is undisputed that adidas filed its Demand for Arbitration on December 2, 2022—21 days after the issuance of the Order—and completed service on Respondents on December 2, 2022 by registered mail, and on December 6, 2022 by email.  Second Taft Decl., ¶¶ 6, 9.  Thus, adidas commenced the arbitration within 30 days of the November 11, 2022 Order.  The fact that JAMS thereafter took some period of time to "confirm the commencement of the arbitration" after adidas made its initial filing does not change the fact that adidas complied with the Order and that there is no factual basis for Yeezy's contention.

Yeezy provides no authority for the proposition that arbitration does not commence upon filing of the demand.  In fact, decisions interpreting NY CPLR § 7502(c)'s requirement that arbitration be "commenced within thirty days of the granting of the provisional relief," confirm that the requirement is satisfied by filing a demand for arbitration.  Even assuming that the NY CPLR's 30-day rule applies (which it does not, for the reasons discussed above in Section II), when granting or confirming preliminary relief in aid of arbitration, courts have found that the arbitration was "commenced" where the petitioner filed a request for arbitration.  *See Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19-cv-3930 (CM), 2019 WL 2240204, at *1, 26 (S.D.N.Y. May 14, 2019) (granting injunction in aid of arbitration pursuant to NY CPLR § 7502(c), where the arbitration had "commenced" after petitioner filed a request for arbitration before the International Chamber of Commerce); *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11-cv-04971 (RJH), 2011 WL 6957595 at *2, 12 (S.D.N.Y. Dec. 28, 2011) (confirming *ex parte* order of attachment in aid of arbitration pursuant to NY CPLR

§ 7502(c), where the arbitration was commenced by demand for arbitration filed with the

American Arbitration Association).  By filing its demand for arbitration on December 2, 2022,

adidas complied with the requirement to commence the arbitration within 30 days of the

November 11, 2022 Order.

### C. Any Award Issued in the Arbitration Would Be Rendered Ineffectual without the Attachment

Yeezy erroneously argues that "adidas failed to show that a potential arbitration award

would be rendered ineffectual without provisional relief."  Respondents' Memorandum, at 7.

But adidas has satisfied the relatively low standard under NY CPLR § 7502(c) that it

"demonstrat[e] the possibility, if not the likelihood" that the award would be "severely

compromised" absent the Order by showing that Yeezy would likely dissipate or make

unavailable the Marketing Funds.  *Mischon*, 2011 WL 6957595, at *8 (quoting *County Natwest*

*Sec. Corp. USA v. Jesup, Josephthal & Co.*, 180 A.D.2d 468, 468 (N.Y. 1st Dep't 1992))

(emphasis omitted).

The arbitration concerns, in part, adidas' efforts to recover possession of the Marketing

Funds, including amounts misspent or not spent by Yeezy.  adidas's right to return of those funds

is clear from the Agreement.  McIntire Decl., ¶ 7; Ex. 1, at ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████; *id*., at ██████

████████████████████████████████████████████████

████████████████████████████████████████

███████████████████.  If the Marketing Funds are dissipated by Yeezy prior to the

Arbitrator's resolution of the dispute, by definition an arbitration award directing Yeezy to return

adidas's property would be compromised.  Moreover, following termination of the Agreement, there is no legitimate purpose for Yeezy to retain or spend any part of the Marketing Funds.  To the extent Yeezy argues that the $75 million in Marketing Funds ███████████████████████████ ███████████████████████████████████████ it bears the burden of establishing that fact through the audit process that it has now been ordered to engage in, after over five months of ignoring adidas's request.  Second McIntire Decl., ¶¶ 7, 8; Ex. A.

Moreover, since entry of the Order, new facts confirm Yeezy's misuse of the Marketing Funds, underscoring adidas's likelihood of success in the arbitration proceeding.  As noted, the Marketing Funds were required to be kept in a segregated account owned by Yeezy Marketing LLC and could not be transferred to any other Yeezy entity or Ye.  Only after the Order was entered did adidas learn that the Yeezy Marketing LLC account at J.P. Morgan into which it transferred Marketing Funds was set up as a "zero balance sweep account," meaning that, instead of being segregated, the Marketing Funds deposited by adidas were immediately transferred to an account owned by Yeezy, LLC.  Second Taft Decl., ¶ 4.  This structure breached the Agreement in two separate ways, by failing to keep the Marketing Funds segregated and by transferring the funds to Yeezy entities other than Yeezy Marketing LLC.  Yeezy argues that any alleged commingling would not make it more difficult for adidas to enforce the award (Respondents' Memorandum, at 9), but this ignores adidas's property interest in the Marketing Funds, Yeezy's contractual obligation to return the Funds upon termination of the Agreement, and Yeezy's refusal to conduct an audit of the Funds.

There is a continued risk that Ye's assets are dissipating and that any future damages award may be rendered ineffectual.  The Garnishee stated its intent to close Yeezy's accounts on November 21, 2022.  McIntire Decl., ¶ 15; Ex. 6, at 12.  But for the Order, those accounts would

now be closed, and the Marketing Funds would likely have been dissipated—as evidenced by

Ye's continued pattern of volatile behavior, failure to hold the Marketing Funds in a segregated

account as required by the Agreement, and his current financial woes.  Yeezy argues that "adidas

has offered no evidence that Yeezy is currently insolvent."  Respondents' Memorandum, at 9.

However, current insolvency is not required.  Rather, as the authority relied upon by Yeezy

demonstrates, it is sufficient to show "*potential* insolvency" or "financial[] insecurity."  *Shah v.*

*Com. Bank Ob'Edinennyi Investitsionnyi Bank*, No. 09-cv-6121 (HB), 2010 WL 743043, *3

(S.D.N.Y. Mar. 4, 2010) (emphasis added).  Respondents cite to three cases in support of their

contention that adidas has failed to show facts that the award would be rendered ineffectual

without attachment, but all of these cases are distinguishable: In *Erickson*, the respondent had

$670 million in assets, which far exceeded plaintiffs' claims for $50 million in damages; in

*Founders*, the respondent was a billionaire, which according to Forbes magazine no longer

describes Ye; and in *Shah*, the petitioner had already successfully attached one of respondent's

bank accounts with millions of dollars that exceeded the potential award.  *Erickson v. Kidder*

*Peabody & Co., Inc.*, 166 Misc. 2d 1, 5 (Sup. Ct. N.Y. Cty. 1995); *Founders Ins. Co. Ltd. v.*

*Everest Nat'l Ins. Co.*, 41 A.D.3d 350, 351 (1st Dep't 2001); *Shah*, 2010 WL 743043, at *3.  By

contrast, unlike those cases, here there is ample evidence that Yeezy faces potential insolvency.

Many of Ye's assets are illiquid (and several of his assets are subject to liens of uncertain value),

which may be why he was using Marketing Funds for personal purchases.  Second McIntire

Decl. ¶¶ 9, 11, Ex. C, at 2, 4, 6.  Additionally, and as publicly reported by many news outlets, Ye

faces severe financial stress and possible insolvency resulting from numerous impending

lawsuits and termination of lucrative business relationships.  Second McIntire Decl. ¶ 10, Ex. B,

at 2, 6, 11, 13, 17, 19.  Ye himself has made multiple comments indicating that he is running out

of money—including his claim that he owes the Internal Revenue Service $50 million in unpaid taxes—and it has been reported that he even has been forced to abandon highly publicized renovations and upkeep of his Malibu home.  Second McIntire Decl., ¶¶ 10, 11, Ex. B, at 4, Ex. C, at 9.

In short, the Marketing Funds belong to adidas, and there is every indication that, if released, Yeezy will spend them, misusing adidas's property and rendering an award against them ineffectual.  The fact that Respondents now seek to vacate the Order, coupled with the circumstances described above, reinforces the risk that the Marketing Funds will be dissipated and the need for the Order to stay in place pending resolution of the dispute in the arbitration.  Accordingly, the attachment was and is equitable and proper.

## III.    In the Event That the Order Is Vacated, adidas Requests the Opportunity to Be Heard on Request for a New Attachment

While the Court should confirm the Order, in the event that the Court determines that it should vacate or modify it, adidas requests the opportunity to be heard on a request for a new attachment of the Marketing Funds within 14 days of such determination and prior to any release of the funds at issue.

The Order states that any levy of Yeezy's property "shall remain valid until 30 days after the date of the resolution by this Court (or the agreement of the Parties) of any motion to confirm and/or motion to vacate this Order. . . . "  Order, at 3–4.  That provision was entered to protect adidas from the misuse of the Marketing Funds in the event that the Order was vacated or modified.

adidas would not require the full 30-day period to submit a new motion for attachment, and merely requests that, in the event that the Court vacates or modifies the Order, it be provided

a reasonable opportunity to be heard on a request for a new attachment before the protections of the Order lapse.

## **CONCLUSION**

For all the reasons stated above, adidas respectfully requests that Respondents' motion to vacate the Order be denied and that the Court enter an order confirming the Order.

Dated:  May 9, 2023
New York, NY

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: _____
Mark P. Goodman (mpgoodman@debevoise.com)
William H. Taft V (whtaft@debevoise.com)
Floriane Lavaud (flavaud@debevoise.com)

66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (Main Office Number)

*Counsel for Plaintiff adidas AG*

## CERTIFICATE OF SERVICE

I, William H. Taft V, a partner of the firm Debevoise & Plimpton LLP, attorneys for Petitioner herein, certify:

I am over eighteen (18) years of age.  On the 9th day of May 2023, I caused to be served true copies of the within Memorandum of Law in Opposition to Respondents' Motion to Vacate the *Ex Parte* Attachment; the Second Declaration of Keith McIntire, dated May 5, 2023, and supporting exhibits; and the Second Declaration of William H. Taft, dated May 9, 2023, and supporting exhibits by first class mail to counsel for the other Parties to this action at the following addresses:

> Peter D. Hawkes
> ANGELI LAW GROUP LLC
> 121 SW Morrison Street, Suite 400
> Portland, OR 97204

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2023.

William H. Taft V