# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ADIDAS AG FOR AN ORDER OF ATTACHMENT IN AID OF ARBITRATION | No. 22-mc-320 (VEC) |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S RENEWED PETITION FOR ORDER OF ATTACHMENT

Mark P. Goodman (mpgoodman@debevoise.com)
William H. Taft V (whtaft@debevoise.com)
Floriane Lavaud (flavaud@debevoise.com)

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Counsel for Petitioner adidas AG*

Dated: May 29, 2023
          New York, NY

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................3

    A.    The Parties ..................................................................................... 3

    B.    The Contractual Framework ............................................................. 4

        1.    Marketing Funds ................................................................... 4

        2.    Agreement to Arbitrate ......................................................... 7

    C.    Ye's Pattern of Misconduct ............................................................. 7

    D.    The Attachment............................................................................ 11

    E.    Ye's Subsequent Conduct .............................................................. 12

        1.    Mishandling of Marketing Funds............................................. 12

        2.    Continued Risk of Waste or Insolvency ................................... 14

ARGUMENT ...........................................................................................................16

I.      The Court Has Jurisdiction ......................................................................16

II.    The Court Should Issue an Order of Attachment............................................17

III.   The Order of Attachment Should Encompass All Accounts of Ye and Ye-
       Affiliated Entities at JPMorgan up to the Amount of $75 Million. ...................24

CONCLUSION..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Capital Ventures Int'l v. Rep. of Arg.*,
    443 F.3d 214 (2d Cir. 2006)..................................................................................21

*County Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*,
    579 N.Y.S. 2d 376..............................................................................................21

*Discover Growth Fund v. 6D Glob. Techs. Inc.*,
    No. 15-CV-7618 PKC, 2015 WL 6619971 (S.D.N.Y. Oct. 30, 2015) ...........................20, 21

*Erber v. Catalyst Trading, LLC.*,
    303 A.D.2d 165 (N.Y. 1st Dep't 2003)..................................................................21

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
    43 F.4th 263, 270 (2d Cir. 2022). ........................................................................18

*Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*,
    11 cv 04971(RJH) 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011)...................................20, 21

*Moquinon, Ltd. v. Gliklad*,
    2017 WL 1482163 (Sup. Ct. N.Y. Co. April 6, 2017)..................................................21

*Pike v. Freeman*,
    266 F.3d 78 (2d Cir.2001)...................................................................................16

*Shah v. Commercial Bank*,
    No. 09-cv-6121 (HB), 2010 WL 743043 (S.D.N.Y. 2010) ............................................22

*Sivault Sys., Inc. v. Wondernet, Ltd.*,
    05 cv 0890(RWS), 2005 WL 681457 (S.D.N.Y. Mar. 25, 2005) ....................................20

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)...................................................................................16

**Statutes & Other Authorities**

JAMS Rule 24(e) ...............................................................................................7

N.Y.C.P.L.R. § 6201......................................................................................17, 20, 23

N.Y.C.P.L.R. § 6212...........................................................................................18

N.Y.C.P.L.R. § 7502....................................................................................11, 17, 21, 23

9 U.S.C. § 201 *et seq*..........................................................................................15

9 U.S.C. § 202 .................................................................................................................16

9 U.S.C. § 203 .................................................................................................................16

28 U.S.C. § 1331 .......................................................................................................15, 16

28 U.S.C. § 1332 .............................................................................................................16

## PRELIMINARY STATEMENT

After suffering considerable damage to its brand as a result of the well-publicized racist, antisemitic, and other offensive public statements and conduct of Ye (formerly known as Kanye Omari West), adidas AG ("**adidas**"), effective November 5, 2022, terminated its business relationship with Ye and his companies, Yeezy, LLC, its affiliate Yeezy Footwear, LLC, and Yeezy Marketing LLC (together with Ye, collectively "**Yeezy**").  adidas commenced arbitration on December 2, 2022 under the Parties' 2017 License and Endorsement Agreement (the "**2017 Agreement**"), and seeks the Court's assistance to preserve funds belonging to adidas, but currently in Respondent's possession, pending resolution of that arbitration.

Pursuant to the now-terminated 2017 Agreement, during 2022 alone adidas paid $75,000,000 into accounts controlled by Yeezy for the express and limited purpose of ███████ ████████████████████████ in connection with the Parties' partnership (the "**Marketing Funds**").  The most recent $25,000,000 of that sum was deposited into a bank account maintained in New York City at JPMorgan Chase N.A. (the "**Garnishee**"); all of the $50,000,000 originally deposited into an account in Wyoming ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████  Under the terms of the 2017 Agreement, upon termination, ownership of any unused Marketing Funds reverted to adidas.  Although adidas has demanded return of the Marketing Funds, its demand has been met with silence.  Moreover, based on public reports ████████████████████████████████ it appears certain that Respondents will at any moment seek to move the Marketing Funds into different accounts unknown to adidas ██████████████████████

On November 11, 2022, this Court exercised its authority to attach $75 million of Respondents' assets that are presently at issue in an arbitration proceeding between the Parties. Order Granting *Ex Parte* Attachment, November 11, 2022 (the "**Order**").  The Court issued the Order because "Petitioner has claims against Yeezy that are subject to arbitration, including for the return of unspent or improperly spent Marketing Funds"; because "it is probable that Petitioner will succeed on the merits with respect to its claims to return of the Marketing Funds"; and because "without provisional relief," "there is a risk that Yeezy will remove or dissipate assets," such that "the award to which Petitioner may be entitled may be rendered ineffectual." *Id.* at 2.

The Court issued an order vacating the Order on May 26, 2023 on the grounds that adidas was required to, and had not, timely commenced an action confirming the order of attachment. Order Vacating *Ex Parte* Attachment, May 26, 2023 (the "**Vacatur Order**").  The need for the attachment to protect the ongoing arbitration, however, is even clearer now than in November when the Court issued the Order.  As set forth below, the attachment is proper under New York law:  adidas has claims against Respondents arising out of Respondents' destruction of a lucrative business relationship, including to recover possession of the funds at issue, which are currently subject to an ongoing audit in the underlying arbitration; adidas is likely to succeed on its claim to the Marketing Funds, given that those funds belong to adidas under the 2017 Agreement (and should already have been returned to adidas); adidas's claims more than offset Respondents' counterclaims, ███████████████████████████████ ████████████████████ Respondents are not registered to do business in New York; and the continuing attachment of Respondents' assets is necessary to eliminate the risk that these assets will be improperly dissipated, potentially rendering an award ineffectual and interfering with an

ongoing books and records audit ordered by the arbitrator.  The risk to the ongoing audit and the
future arbitration award has grown since November, given Ye's deteriorating financial condition
and the revelation that, prior to the attachment, Yeezy Marketing transferred Marketing Funds
directly to Ye and into other Yeezy accounts in violation of the Parties' Agreement.  The audit
process that will confirm adidas's entitlement to the funds is now underway, with the arbitrator
recently having ordered Yeezy to produce the Marketing Funds-related books and records that
Yeezy had refused, without justification, to provide for nearly six months. In fact, a preliminary
review of financial records provided since the initial attachment was ordered by the Court shows

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ The
Court should maintain the status quo by renewing the attachment, pending resolution of the
Parties' dispute in the arbitration.

## STATEMENT OF FACTS

### A.    The Parties

Petitioner adidas is a German entity with its primary U.S. presence in Oregon.
Declaration of Keith McIntire dated May 29, 2022 ("**McIntire Decl.**") ¶ 5(a).

Respondent Yeezy, LLC is a Delaware limited liability company not registered to do
business in New York.  *Id.* ¶¶ 5(b), 6, Ex. 1, at 1.

Respondent Yeezy Marketing LLC is a limited liability company not registered to do
business in New York.  *Id.* ¶¶ 5(c), 6.  In the 2017 Agreement, Yeezy Marketing LLC is listed as
a California entity, but it appears to currently be domiciled in Wyoming.  *Id.* ¶ 5(c).  Yeezy
Marketing LLC is jointly and severally liable with Ye and Yeezy, LLC.  *Id.* ¶ 7, Ex. 1, at 20.

Yeezy Footwear LLC is an affiliate of Yeezy, LLC, and is jointly and severally liable with Yeezy, LLC. *Id.*

Ye owns substantially all of Yeezy, LLC. *Id.* ¶ 5, Ex. 1, at 15. Ye wholly owns Yeezy Marketing LLC and Yeezy Footwear LLC, either directly or through other entities that are wholly owned by him. *Id.* ¶ 5(f), Ex.1, at 14, 15. Ye controls Yeezy, LLC, Yeezy Marketing LLC, and Yeezy Footwear LLC. Ye is also a party to the Agreement and is required to substitute himself for Yeezy, LLC in the event that the entity ceases to exist or fails to perform. *Id.* ¶ 5(e), Ex. 1, at 9.

### B.    The Contractual Framework

In 2016, the Parties entered into the 2017 Agreement, which concerned the international sale and promotion of footwear and apparel (the "**Products**"). Ex. 1, at 1. As relevant here, the 2017 Agreement was amended by an Amendment on September 30, 2019 (the "**2019 Amendment**"), a January 10, 2020 Payment Confirmation (the "**January 2020 Payment Confirmation**"), a February 18, 2020 Payment Confirmation (the "**February 2020 Payment Confirmation**") and an August 15, 2020 Payment Confirmation Letter (the "**August 2020 Payment Confirmation,**" jointly referred to as the "**Agreement**"). McIntire Decl. ¶ 3, Ex. 1.

#### 1.    Marketing Funds

The Agreement provided the framework for a business unit that ultimately sold several billions of dollars of Products. McIntire Decl. ¶ 4. As part of that framework, the Agreement provided that adidas would provide Yeezy with Marketing Funds that were required to be used only for permitted marketing purposes as specifically defined in the Agreement. McIntire Decl. ¶ 9, Ex. 1, at Third Amendment ¶ 6(c). The Marketing Funds did not belong to Ye or Yeezy, and upon termination of the Agreement for any reason, any unspent Marketing Funds provided over the prior 12 months were required to be returned to adidas. McIntire Decl. ¶ 14, Ex. 1, at ▮

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████

████████████████████████████████████████ adidas has the right to

examine Yeezy's and Yeezy Marketing's books and records related to compliance with the

spending restrictions applicable to the Marketing Funds.  *Id.*, Ex. 1, at █████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Any amounts determined by such audit to have been

improperly used must be reimbursed by Yeezy, ███████████████████████████████████

██████████████████████████████████████████████

*Id.*, Ex. 1, at ████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████

██████████████████████████████████████████

McIntire Decl. ¶ 2.  In 2022 alone, adidas provided $75 million in Marketing Funds to Yeezy.

McIntire Decl. ¶ 15, Ex. 4.  Petitioner understands that Yeezy and its affiliated entities hold bank accounts with the Garnishee in New York, as well as bank accounts in Wyoming.  McIntire Decl. ¶ 15; *id.* ¶ 16, Ex. 5, at 1–2.  Of the $75 million in Marketing Funds adidas provided to Yeezy in 2022, $50 million were paid to bank accounts held by Yeezy Marketing LLC in Wyoming and $25 million were paid to the Garnishee account in New York.  McIntire Decl. ¶ 15, Ex. 4, at 1; *id.* ¶ 16, Ex. 5, at 1–2.

Based on the contractual requirement that the Marketing Funds be held in a segregated account, and the instructions from Yeezy to direct the last installment of the Marketing Funds to an account at the Garnishee, adidas has reason to believe that some or all of the $50 million from the Wyoming accounts have been transferred to the Garnishee.  McIntire Decl. ¶ 16; Ex. 5, at 1– 2; *see* Ex. 1,  Declaration of Serena Morones ("**Morones Decl.**") ¶¶ 7, 9. *Id.* at ¶ 11.  Because, at the time, Yeezy was conducting its banking through JPMorgan Chase, it is likely that the unspent Marketing Funds initially

deposited in the Wyoming accounts were almost entirely transferred to accounts at Garnishee.

Morones Decl. ¶¶ 5,9. ███████████████████████████████████████████████████

████████████████████████████████████████████ the full extent to which funds held in

Garnishee accounts constitute Marketing Funds remains to be established through the books and

records audit ordered by the arbitrator.    Morones Decl. ¶ 4.

        2.      **Agreement to Arbitrate**

The Parties agreed that "any disputes arising out of or relating to [the] Agreement or the

breach, termination, enforcement, interpretation or validity thereof … shall be determined by

arbitration in Portland Oregon before one (1) arbitrator."  McIntire Decl. ¶ 11, Ex. 1, at 2017

Agreement § 46(B).  The "Arbitration shall be administered by JAMS pursuant to its

Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited

Procedures in those Rules."  Ex. 1, at August 15, 2020 Payment Confirmation ¶ 2(j).  The

applicable JAMS Rules provide that "[a]ny recourse by a Party to a court for interim or

provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of

the right to arbitrate."  JAMS Rule 24(e), effective June 1, 2021.

      **C.**      **Ye's Pattern of Misconduct**



In 2022, Ye made a series of highly public and offensive statements

that violated the terms of the Agreement, destroyed billions of dollars of brand value, ████

████████████████████████████████████████████ McIntire Decl. ¶¶ 12, 13; Ex. 3.  On

October 3, 2022, at a high-profile fashion show for his "Yeezy Season 9" fashion line, Ye and several other participants wore t-shirts designed by Ye with the white-supremacist slogan "White Lives Matter."  McIntire Decl., Ex. 2, at 1, Vanessa Friedman, There is No Excuse for Ye's 'White Lives Matter' Shirt, NY Times (Oct. 4, 2022).  In response to this reprehensible conduct, among other issues, adidas publicly announced that the company was placing its partnership with Ye "under review."  Ex. 2, at 5, Adidas puts Kanye West Yeezy deal under review, BBC (Oct. 7, 2022); Id., at 9, Ross Dwyer, adidas Has Placed the Yeezy Partnership "Under Review", Hypebeast (Oct 6, 2022).  On October 6, 2022, and in response to adidas, Ye posted on Instagram: "FUUUUUUCK ADIDAS I AM ADIDAS ADIDAS RAPED AND STOLE MY DESIGNS."  Id., at 12, Marisa Dellatto, Kanye West's Antisemitic, Troubling Behavior – Here's Everything He's Said in Recent Weeks, Forbes (Nov. 7, 2022).

　　　　In addition, on October 7, 2022, Ye posted to Instagram several screenshots of a text message exchange with music impresario Sean J. Combs, a/k/a Diddy, in which Ye told Diddy: "Ima use you as an example to show the Jewish people that told you to call me that no one can threaten or influence me."  *Id.*, at 14; *Id.*, at 21; *Id.*, at 20, Andrew Limbong, Twitter Follows Instagram in restricting Ye's account after antisemitic posts, NPR (October 10, 2022).  Later that weekend, Ye posted on his 31-million-follower Twitter account: "[W]hen I wake up I'm going death con 3 On JEWISH PEOPLE" and "You guys have toyed with me and tried to black ball anyone whoever opposes your agenda."  *Id.*, at 21.  This tweet has been widely condemned and was covered by the mainstream media.  Twitter unilaterally deleted the tweet and locked Ye's account for violating its terms of service.  Then, on October 15, 2022, in an appearance on the popular "Drink Champs" internet show and podcast, Ye made several additional and even more extreme racist and antisemitic comments.  Alongside a litany of conspiracy theories and other

antisemitic statements, Ye declared: "I can literally say antisemitic shit and they can't drop me.  I can say antisemitic things and adidas can't drop me.  Now what? . . . That's the position. . . . Ima hold my ground.  I'm not backing down."[1]

██████████████████████████████████████████████████

████████ the adidas board announced that it would terminate the Agreement on October 25, 2022.  Ex. 3, at 3.  That announcement set in motion a contractual notification and consultation provision, which culminated with adidas sending a termination letter to Ye and Yeezy on November 5, 2022 (the "**Termination Letter**"), exercising its termination rights pursuant to Section 34███████████████ Ex. 3, at 1; *see* Ex. 1, at 2017 Agreement § 34████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████ Pursuant to the self-executing language in paragraph 4 of the August 15, 2020 Payment Confirmation, Yeezy and its affiliates were required to return to adidas an amount of its funds equal to the total amount of Marketing Fund payments made by adidas to Yeezy LLC in the previous 12 months—which amounts to $75 million—less any permitted marketing expenditures made by Yeezy during this time period that Yeezy can demonstrate complied with the Agreement.  McIntire Decl. ¶¶ 9, 14; Ex. 1, at August 15, 2020 Payment Confirmation ¶ 4.

---

[1] Ye's appearance was initially accessible on the Drink Champs YouTube channel at https://www.youtube.com/watch?v=-ZmbP5vIbyk, but viewing has been restricted at the time of this statement due to the public outcry in response to Ye's comments.  However, several recordings of the episode remain readily available on YouTube as of the time of this statement, including at https://www.youtube.com/watch?v=7Rt4At58Mrc, last visited May 27, 2023.

adidas included a demand for return of these funds in the Termination Letter.  McIntire Decl. ¶ 14; Ex. 3, at 1–2.

In an email apparently sent by the Garnishee that was leaked to the press on October 12, 2022, and as reported by many news outlets, the Garnishee chose to end its relationship with Yeezy and its affiliated entities.  McIntire Decl. ¶ 17, Ex. 6, at 12; *see also* Ex. 6, at 1, Tom Skinner, Kanye West responds after JPMorgan Chase severs ties with him, NME (October 13, 2022); *Id.*, at 8, Laura Snapes, Kanye West: bank JP Morgan Chase cuts ties with rapper, The Guardian (October 14, 2022), *Id.*, at 10, Ken Sweet, Banking breakup between Ye, JPMorgan planned for weeks, APNews (October 14, 2022).  On or after November 21, 2022, the Garnishee intended to close all of Ye and Yeezy's open accounts, and after deduction of any permissible service charges and pending transactions, remit all remaining funds in the form of a check delivered to Ye or Yeezy or transfer them to another financial institution indicated by Ye or Yeezy.  Ex. 6, at 12.  Under the Agreement, the Marketing Funds may not be disbursed to Ye or Yeezy, LLC.  Ex. 1, at Third Amendment ¶ 6 (c) ██████████████████████████████ ████████████████████████████████████████ *see* McIntire Decl. ¶¶ 9, 22.

In order to obtain the return of its property and recover damages for losses caused by Yeezy's breaches of the Agreement, adidas commenced arbitration on December 2, 2022. Declaration of William H. Taft dated May 29, 2023 ("**Taft Decl.**") ¶ 5, Ex. 10.  JAMS "confirm[ed] the commencement of the arbitration" on December 15, 2022.  *Id.*  Despite being served with adidas's Demand for Arbitration on December 2, 2022 by registered mail and on December 6, 2022 by email, which again put Yeezy on notice of the existence of the arbitration and the Order, Ye did not appear in the arbitration until January 14, 2023, nearly a month and a half later.  *Id.* ¶ 7. Ex. 11.  On February 1, 2023, the Honorable Judge Rebecca Westerfield was

appointed as arbitrator by mutual agreement of the Parties (the "**Arbitrator**").  *Id*. ¶ 8.  On February 13, 2023, adidas and Respondents stipulated that "Claimant filed its Demand for Arbitration on or about December 2, 2023."  *Id*. ¶ 9, Ex. 12, at 1.  The preliminary conference occurred on April 25, 2023; discovery in the arbitration, as well as the audit ordered by the arbitrator, are now underway.  *Id*. ¶ 10.

        **D.**      **The Attachment**

In light of public reports that the Garnishee intended to close accounts associated with Ye and Yeezy, adidas took steps to protect its ownership interest in those Marketing Funds by filing an *ex parte* petition in the U.S. District Court for the Southern District of New York to attach up to $75 million of funds in Respondents' accounts in aid of arbitration.  McIntire Decl. ¶ 20. adidas requested relief under Federal Rule of Civil Procedure 64, which permits remedies allowed by the New York Civil Practice Law & Rules (the "**NY CPLR**"), and pursuant to the Court's equitable authority to preserve adidas's interest in its own property—the Marketing Funds.  Pet.'s Mem. of Law in Supp. of Mot. for *Ex Parte* Order of Attachment, Dkt. 29 at 9–15.

On November 11, 2022, the Court granted adidas's *ex parte* petition.  Order, at 3.  In the Order, the Court made it clear that it was granting relief both "pursuant to Rule 64" and "under New York Civil Practice Law and Rule," as well as pursuant to its "equitable authority, independent of its authority under NY CPLR § 7502."  Order, at 2.  The Court also ordered that, in the event that the Order was modified or vacated, it would "remain valid [for] 30 days," giving adidas time to protect its property.  Order, at 3–4.  Additionally, the Court directed adidas to provide "service of this order . . . and all supporting documents" to "Respondents within ten days" and required that adidas post a bond of $75,000 no later than November 15, 2022.  Order, at 4.

Consistent with the Order, adidas served the Order on Respondents and posted the required bond on November 15, 2022. Taft Decl. ¶ 3. adidas did not have access to the funds subject to the Order; rather, the attachment merely froze the relevant JPMorgan accounts, preventing Yeezy's use or dissipation of the Marketing Funds. McIntire Decl. ¶¶ 20, 21, 24. Despite being on notice of the Order since November 2022, Ye did not appear before this Court until April 12, 2023, nearly five months after receiving notice of the Order.

      **E.**      **Ye's Subsequent Conduct**

            1.      Mishandling of Marketing Funds

Yeezy mishandled a substantial amount of the ▮▮▮▮▮▮ in total Marketing Funds and virtually all of the $75 million adidas provided in 2022, including by disbursing the funds, commingling the funds, or using the funds for unauthorized purposes. Notably, adidas has learned that the Yeezy Marketing account established at the Garnishee in 2022 for the purpose of receiving the Marketing Funds maintained ▮▮▮▮▮▮ Morones Decl. ¶ 6. Consequently, instead of being segregated as required under the Agreement, the Marketing Funds deposited by adidas ▮▮▮▮▮▮▮▮▮▮ out of the Yeezy Marketing account and commingled in an account held by another Yeezy entity with the Garnishee in violation of the Agreement. Taft Decl. ¶ 4.

By letter of November 15, 2022, adidas exercised its right to examine Yeezy's books and records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to determine whether Yeezy used the Marketing Funds "in a way that is not in compliance" with the Agreement, including the requirement against commingling, improper disbursement, or unauthorized use. McIntire Decl. ¶ 22; Ex. 7; *see also* Ex. 1, at Third Amendment ¶ 6(e). But for nearly six months, adidas received no response from Yeezy. As a result of this refusal by Yeezy to honor its contractual obligation, adidas was unable to conduct an audit or confirm the

full extent to which Yeezy commingled, disbursed, and/or misused the Marketing Funds in breach of the Agreement.  McIntire Decl. ¶ 23.

After the preliminary conference for the arbitration, adidas requested from the Arbitrator an order requiring Respondents to preserve and immediately make available to adidas all accounting books and records relevant to an accounting of the Marketing Funds, as it is entitled to do so under the Agreement.  Taft Decl. ¶ 10; McIntire Decl. ¶ 23, Ex. 1, ████████████ ████  During a conference held on May 3, 2023, the Arbitrator ordered Yeezy to make available to adidas all such books and records by May 17, 2023.  Taft Decl. ¶ 10; McIntire Decl. ¶ 23.  On May 17, 2023, Respondents made an initial production of such books and records, which are finally now under review as part of the ongoing audit.  Taft Decl. ¶ 11.

Yeezy's ███████████████████████████ shows that, of the $75 million in Marketing Funds adidas provided to Yeezy in 2022, ███████████████ Morones Decl. ¶ 11.  Yeezy is obligated to return those funds to adidas, not as damages but as a return of adidas's own property.  Ex. 1, at August 15, 2020 Payment Confirmation ¶ 4.  The ████████████████████████████████ show that Yeezy ████████████████████████ while ████████████████ ██████ resulting in ████████████████ or unspent Marketing Funds.  Morones Decl. ¶ 10.  It appears that the unspent Marketing Funds were either ████████████████ (in an amount totaling ████████) or ██████████████████████████ (in an amount totaling ████████████).  *Id.*

Based on adidas's preliminary analysis of Yeezy's ████████████ adidas has also determined that ████████████ of the Marketing Funds were ████████████████ ████████████████.  For example, over ████████████ Marketing Funds ████



████████████████████████████████████████████████
████████████████ in direct violation of the Agreement.  Morones Decl. ¶ 8; Ex. 1, at
Third Amendment ¶ 6(c).  Separate and apart from the $25 million deposited into Yeezy
Marketing's ████████████████ at Garnishee, an additional ████████████ Marketing
Funds were ████████████████████████████████ and ████████████████
████ Marketing Funds were ████████████████████████████████
████████ Morones Decl. ¶ 8. ████████████████████████████████
████████████████████████████ in addition to ████████████ Marketing Funds provided by
adidas to Yeezy between ████████████ Yeezy's accounts received ████████████████
████████████████████████████████████████████████
Marketing Funds ████████████████████ *See id.* ¶ █; Ex. 1, at ████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████

2.      Continued Risk of Waste or Insolvency

Many of Ye's assets are illiquid, and several of his assets are subject to liens.  Second
McIntire Decl. ¶ 25.  Since the Order, Ye has made multiple public comments highlighting his
severe financial stress and ████████████████ Marketing Funds ████████████████
████████████████—including his claim that he owes the Internal Revenue Service $50
million in unpaid taxes (and Yeezy reportedly owes the State of California over $600,000 in
unpaid taxes), his execution of a divorce settlement agreement that reportedly requires him to
pay $2.4 million in annual child-support payments, and his announcement of his now-abandoned

2024 presidential campaign.  McIntire Decl. ¶ 26, Ex. 8, at 1–2, Pete Syme, <u>Kanye West says</u> <u>Adidas sued him for $275 million and froze all his bank accounts in a video announcing his 2024</u> <u>presidential campaign</u>, Business Insider (Nov. 25, 2022); Ex. 8, at 3–4, Ariel Zilber, <u>Kanye West</u> <u>said IRS froze his accounts because he owes $50M in taxes</u>, NY Post (Nov. 29, 2022); Ex. 8, at 36, <u>Ye's Yeezy clothing brand owes California $600,000, according to state tax liens</u>, NBC News (Dec. 7, 2022); Ex. 8, at 8, <u>Kim Kardashian gets $200,000 monthly child support</u> <u>settlement from Ye</u>, Reuters (Nov. 29, 2022); Ex. 8, at 11, <u>Kanye West Still Stuck in 'Donda 2'</u> <u>Battle Amid His Lawyers Plan to Drop Him – But There's a Silver Lining</u>, Music Times (Nov. 1, 2022); Ex. 8, at 13, Oli Coleman, <u>Kanye West could face financial crisis within months</u>, Page Six (Oct. 30, 2022); Ex. 8, at 17, Preezy Brown, <u>Kanye West And Yeezy Sued For 275K By Ex</u> <u>Adidas Employee</u>, Vibe (Mar. 31, 2023), Ex. 8, at 30, Erin Keller, <u>Kanye West sued by Gap for</u> <u>$2M after failed Yeezy collaboration</u>, NY Post (May 24, 2023).

Moreover, shortly after the Order was entered, Ye further diminished the value of his endorsement and commercial opportunities by continuing to make racist and incendiary statements, ranging from stating his admiration of Hitler on an appearance on The Alex Jones Show, claiming that Rosa Parks was a "plant," suggesting that Jewish people "are used by the Chinese" to control Black people, and posting a swastika on Twitter.  McIntire Decl. ¶ 26, Ex. 9, at 21, Nikki McCann Ramirez, <u>Kanye to Alex Jones: 'I Like Hitler'</u>, Rolling Stone (Dec. 1, 2022); Ex. 9, at 24, Cole Blake, <u>Kanye West Claims Rosa Parks Was a "Plant"</u>, HotNewHipHop (Dec. 12, 2022); Ex. 9, at 29, John Yoon, <u>Kanye West Is Suspended From Twitter After Posting</u> <u>a Swastika</u>, New York Times (Dec. 2, 2022); *see also* The Alex Jones Show, *Kanye West* *Interview*, https://www.banned.video/watch?id=63893df613d24b7697321bc0, last accessed May 8, 2023.  As these bizarre statements indicate, Ye has continued the same pattern of misconduct

that ███████████████████████████████████████ and its petition to this Court to prevent

the dissipation of the Marketing Funds pending resolution of the dispute through arbitration.

In an attempt to demonstrate that it is not at risk of insolvency, Yeezy filed a declaration

of its accountant, stating that "[n]either Yeezy as a whole, nor Yeezy, LLC, Yeezy Marketing, or

Yeezy Footwear individually, could currently be considered insolvent" because "[e]ach of those

entities has assets that exceed its liabilities" and "each of those entities is able to pay its debts as

they come due as of the date of this declaration."  Declaration of Rusty Allen, Dkt. 42 ¶ 3.  But

that declaration does not provide any evidence that Yeezy is not at risk of insolvency.  Nor does

it state whether it considers the $75 million of Marketing Funds held by Yeezy to be an asset of

Yeezy for purposes of the insolvency analysis, or whether it views the obligation to return those

unspent Marketing Funds, and additional mishandled Marketing Funds, to be a liability.

## ARGUMENT

### I.      The Court Has Jurisdiction

The Court has federal question jurisdiction under 28 U.S. Code § 1331, as this Petition is

in support of an international arbitration proceedings to be brought pursuant to an arbitration

agreement governed by the New York Convention.  9 U.S.C. § 201 *et seq*.  Chapter 2 of the

Federal Arbitration Act, implementing the New York Convention, provides that "[a]n action or

proceeding falling under the Convention shall be deemed to arise under the laws and treaties of

the United States." 9 U.S.C. § 203.  The Convention, in turn, covers arbitration agreements and

awards arising out of commercial relationships where one party is not a citizen of the United

States.  9 U.S.C. § 202.

In order for the Convention to apply, four criteria must be met: (*i*) there must be a written

agreement; (*ii*) the agreement must provide for arbitration in the territory of a signatory of the

Convention; (*iii*) the subject matter must be commercial; and (*iv*) the agreement cannot be

entirely domestic in scope.  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999); *see also Pike v. Freeman*, 266 F.3d 78, 85 n.4 (2d Cir. 2001) (listing same essential requirements in three parts).  Each of those requirements is satisfied because the 2017 Agreement contains an express arbitration agreement; provides for arbitration in the United States, which has ratified the Convention; concerns the design, production, and marketing of footwear and other products, all of which constitute commercial activity; and is both between a German company and domestic companies and addresses the international sale and promotion of the Products.  McIntire Decl. ¶¶ 4;5; Ex. 1, at 1, 7–8, 18–19.  Accordingly, this Court has federal question jurisdiction under 28 U.S. Code § 1331 and the FAA.

Alternatively, the Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 as there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.  adidas is a German entity with its primary U.S. presence in Oregon.  McIntire Decl. ¶ 5(a); Ex. 1, at 1.  Yeezy, LLC is a Delaware limited liability company and Yeezy Marketing LLC is a Wyoming limited liability company (despite representing themselves as a California limited liability company for the purposes of the Agreement).  McIntire Decl. ¶ 5(c).  Ye, who owns or substantially controls all Yeezy entities, is domiciled in California, and there are no known members of any Yeezy entity with a presence in Oregon or outside the United States.  *Id.* ¶ 5; Ex. 1, at 14, 15.  As is relevant here, the minimum amount in controversy is the $75 million of Marketing Funds paid to Yeezy in 2022.  McIntire Decl. ¶ 15; *see, generally* Ex. 6, at 12, Ex. 4, Ex. 5.

## II.   The Court Should Issue an Order of Attachment

Yeezy currently possesses nearly all of the $75 million of adidas's unspent Marketing Funds to which it has no legal right, at least $25 million, and likely all, of those funds are in accounts maintained by the Garnishee, and the Garnishee intended to close all those accounts by

November 21, 2022 and was only prevented from doing so pursuant to this Court's Order.  New York law provides for orders of attachment in aid of arbitration when, as here, an arbitration award may be rendered ineffectual without preliminary relief.  N.Y.C.P.L.R § 7502(c).  Permitting the Garnishee to release the frozen funds and close the accounts would allow Yeezy to move those funds to unknown accounts and threaten to severely compromise their recovery.

New York Civil Practice Laws and Rules § 6201 provides that an "order of attachment may be granted in any action, . . . where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants," provided that one of five conditions is met.  N.Y. C.P.L.R. § 6201.  On an application for an order of attachment, a petitioner must show, by affidavit and other written evidence, that: (1) there is a cause of action, (2) it is probable that the plaintiff will succeed on the merits, (3) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff, (4) that one of the five grounds articulated in N.Y. C.P.L.R. § 6201 is satisfied, and (5) that the arbitration would be rendered ineffectual without the attachment of the assets at issue.  N.Y. C.P.L.R. §§ 6201, 7502(c).  Each of those requirements has been met.

*First*, adidas has multiple causes of action against Yeezy, resulting from Ye's highly public and offensive conduct described above, which violated the terms of the Agreement and justified adidas's termination of that contract.  Those broader causes of action, as well as the dispute over rights to the remaining Marketing Funds and Yeezy's use of expended Marketing Funds, will be resolved through arbitration.  As is relevant to the requested order, Yeezy is in possession of at least $75 million of Marketing Funds that adidas made available to Yeezy in 2022 in order to promote Products.  Ex. 4; Ex. 1, at Third Amendment ¶ 6(c); McIntire Decl. ¶¶ 9, 15.  Any unspent or misappropriated portion of those funds belong to adidas, despite being

in Yeezy's possession, and must be returned upon termination of the Agreement for any reason.
Ex. 1, at Third Amendment ¶ 6(e); August 15, 2020 Payment Confirmation ¶ 4.  Ye's public,
brand-damaging and antisemitic conduct is well documented, and ███████████████████
██████████████████████████  McIntire Decl. ¶ 12; Ex. 1, 2017 Agreement § 34(A)(vii)(a)
and (b); Ex. 2.  Accordingly, adidas was justified in terminating the Agreement, and Yeezy must
now return to adidas the Marketing Funds in its possession.  Because Yeezy has failed to return
the Marketing Funds, adidas has a clear cause of action to recover possession of those funds,
which are currently subject to an ongoing audit in the underlying arbitration.  Taft Decl. ¶ 11.

Second, not only is it "probable that [adidas] will succeed on the merits" of its claim,
N.Y. C.P.L.R § 6212(a), it is a near certainty that adidas will succeed.  In assessing this element,
adidas is to be afforded "the benefit of all legitimate inferences and deductions that can be made
from the facts stated."  *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 270 (2d Cir. 2022).
On its face, and as described above, the Agreement indicates that upon termination for any
reason, any Marketing Funds provided over the prior 12 months and not spent on valid marketing
expenses must be returned to adidas.  McIntire Decl. ¶ 9; Ex. 1, at Third Amendment ¶ 6(e);
August 15, 2020 Payment Confirmation ¶ 4, Ex. 7.  adidas has provided Yeezy with the
beneficial use of a total of $75 million in 2022, none of which has been returned.  McIntire Decl.
¶ 14; Ex. 4.  ████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████
█████████  Morones Decl. ¶ 11.

But there is also overwhelming evidence that the Marketing Funds █████████████ █████████ in accordance with the Agreement.  As noted, the Marketing Funds were required to be kept in a segregated account owned by Yeezy Marketing LLC and could not be transferred to any other Yeezy entity or Ye.  Only after the Order was entered did adidas learn that the Yeezy Marketing LLC account at JPMorgan into which it transferred Marketing Funds ████████ █████████ Morones Decl. ¶ 6; Taft Decl. ¶ 4.  This shows that, instead of being segregated, █████████ deposited by adidas were immediately transferred other accounts, including accounts held by Yeezy, LLC with the Garnishee.  *See* Taft Decl. ¶ 4.  ████████████████ ████████████████████ by failing to keep the Marketing Funds segregated and by transferring the funds to Yeezy entities other than Yeezy Marketing LLC.  As explained above, based on adidas's preliminary review of Yeezy's financial records produced pursuant to adidas's audit rights, Yeezy violated the Agreement by transferring ███████████████ Marketing Funds ████████████ transferring at least ████████████ Marketing Funds █ ████████████████████████ transferring ███████████████████ Marketing Funds ████████████ and ███████████████████ in accounts exclusively meant to hold the Marketing Funds,.  Morones Decl. ¶¶ 5, 8.  Yeezy's financial records demonstrate that, instead of spending the Marketing Funds on Marketing Purposes, Yeezy ████████████████████ and ██████████████████████████ ████████████████ *Id.* ¶ ██.  Accordingly, there is no question that adidas has a meritorious claim to take back possession of its own unspent and misspent Marketing Funds in the amount of $75 million.

*Third*, although Yeezy has asserted claims against adidas relating to an alleged breach of the Agreement, those claims (which lack merit and will be resolved during the ongoing

arbitration proceedings) are more than offset by adidas's claims for damages arising from Ye's breaches, which include the destruction of a business line that generated billions of dollars in annual sales.  McIntire Decl. ¶ 25.  Moreover, the Agreement caps any liability adidas may have to Yeezy at ▮▮▮▮▮▮▮ far less than the $75 million of Marketing Funds at issue, let alone adidas's broader claims.  Ex. 1, at August 15, 2020 Payment Confirmation ¶ 2(g).  And with respect to the requested attachment, even if Yeezy's claims were successful, they would not entitle Yeezy to retain unspent Marketing Funds belonging to adidas.  Because adidas's claims against Yeezy – both in total, and in respect to the specific dispute over the Marketing Funds – exceed in value Yeezy's claims against adidas, attachment in aid of arbitration is warranted.

*Fourth*, neither Yeezy, LLC nor Yeezy Marketing LCC nor Yeezy Footwear LLC is registered to do business in New York.  Therefore, to the extent adidas is obligated to satisfy the requirements of N.Y. C.P.L.R. § 6201, it clearly does so.[2]  *Discover Growth Fund v. 6D Glob. Techs. Inc*., No. 15-CV-7618 PKC, 2015 WL 6619971, *4 n.5 (S.D.N.Y. Oct. 30, 2015) ("There is no serious dispute that Discover could satisfy the grounds set forth in CPLR 6201(1) in that [Respondent] is a foreign corporation-it is a corporation organized under the laws of Delaware-and is not qualified to do business in New York.").

---

[2]    There is some dispute among New York courts as to whether the requirements of § 6201 are applicable in the context of a petition for attachment in support of arbitration.  *See Mishcon de Reya New York LLP v. Grail Semiconductor, Inc*., 11 cv 04971(RJH), 2011 WL 6957595, at *8 (S.D.N.Y. Dec. 28, 2011) (not required to satisfy CPLR § 6201); *see also Sivault Sys., Inc. v. Wondernet, Ltd.*, 05 cv 0890(RWS), 2005 WL 681457, at *3 n. 1 (S.D.N.Y. Mar. 25, 2005) ("The grounds for attachment set forth in Section 6201 are, by the express terms of Section 7205(c), inapplicable to petitions for orders of attachment brought pursuant to that latter section."); *but see Erber v. Catalyst Trading, LLC.,* 303 A.D.2d 165 (N.Y. 1st Dep't 2003) ("[T]he criteria for provisional relief set forth in CPLR articles 62 and 63 are not relaxed when such relief is sought in aid of arbitration pursuant to CPLR 7502(c).").  To the extent these requirements are applicable, they are satisfied.

*Finally*, "the award to which the applicant may be entitled may be rendered ineffectual without [the] provisional relief" sought here.  N.Y. C.P.L.R. § 7502(c).  The Second Circuit "has stated that such a requirement amounts to inquiring whether the petitioner 'has need for the attachment.'"  *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc*, 2011 WL 6957595, at *3 (S.D.N.Y. December 28, 2011) (quoting *Capital Ventures Int'l v. Rep. of Arg.*, 443 F.3d 214, 221 (2d Cir. 2006)).  The mere "possibility . . . that absent the attachment being requested, the ultimate award would be severely compromised" is sufficient to satisfy N.Y. C.P.L.R. § 7502(c).  *See, e.g.*, *County Natwest Sec. Corp. USA v. Jesup, Josephthal & Co.*, 579 N.Y.S. 2d 376, 377 (1st Dep't 1992) (holding that an attachment should have been granted to the petitioner); *Moquinon, Ltd. v. Gliklad*, 2017 WL 1482163, at *5, *8 (Sup. Ct. N.Y. Co. April 6, 2017) (holding the petitioner met its burden to obtain an order of attachment).

The arbitration concerns, in part, adidas's efforts to recover possession of the Marketing Funds, including amounts misspent or not spent by Yeezy.  adidas's right to return of those funds is clear from the Agreement.  McIntire Decl. ¶ 9; Ex. 1, at Third Amendment ¶ 6(c) ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████; *id*., at Third Amendment ¶ 6 (e) ██████████████████████████████████

████████████████████████████████████

██████████████████.  If the Marketing Funds are dissipated by Yeezy prior to the Arbitrator's resolution of the dispute, by definition an arbitration award directing Yeezy to return adidas's property would be severely compromised.  Moreover, following termination of the Agreement, there is no legitimate purpose for Yeezy to retain or spend any part of the Marketing

Funds.  To the extent Yeezy argues that the $75 million in Marketing Funds were spent prior to termination of the Agreement and compose no part of the restrained funds, it bears the burden of establishing that fact through the audit process that the Arbitration has ordered to proceed. McIntire Decl. ¶¶ 4, 22, 23; Ex. 7.  In any event, ███████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████ Marketing Funds ████████████████████████████████

████████████████████████ Morones Decl. ¶ 11.

        There is also a continued risk that Ye's assets are dissipating and that any future damages award may be rendered ineffectual.  The Garnishee stated its intent to close Yeezy's accounts at or around October 12, 2022.  McIntire Decl. ¶ 17; Ex. 6, at 12.  But for the Order, those accounts would now be closed, and the Marketing Funds would likely have been dissipated—as evidenced by Ye's continued pattern of volatile behavior, failure to hold the Marketing Funds in a segregated account as required by the Agreement, misuse of the Marketing Funds, and his current financial woes.  There is ample evidence that Yeezy faces potential insolvency.  *See Shah v. Commercial Bank*, No. 09-cv-6121 (HB), 2010 WL 743043, at *3 (S.D.N.Y. 2010) (an award may be "rendered ineffectual" where the petitioner demonstrates "potential insolvency").  Many of Ye's assets are illiquid (and several of his assets are subject to liens of uncertain value), which ████████████████████████ Marketing Funds ███████████████.  McIntire Decl. ¶¶ 25, 27, Ex. 9, at 2, 4, 6.  Additionally, and as publicly reported by many news outlets, Ye faces severe financial stress and possible insolvency resulting from numerous impending lawsuits and termination of lucrative business relationships.  McIntire Decl. ¶ 26, Ex. 8, at 2, 6, 11, 13, 17, 19. Ye himself has made multiple comments indicating that he is running out of money—including his claim that he owes the Internal Revenue Service $50 million in unpaid taxes—and it has been

reported that he even has been forced to abandon highly publicized renovations and upkeep of his Malibu home.  McIntire Decl. ¶¶ 26, 27, Ex. 8, at 4, Ex. 6, at 9, Ex. 9, at 9.

An attachment under CPLR §§ 6201 and 7205 does not require a showing that Yeezy is presently insolvent; only that an award "may" be rendered ineffectual in the absence of relief. N.Y. C.P.L.R. § 7502(c).  The affidavit recently obtained by Yeezy from a financial controller attesting to its insolvency raises more questions than it answers, including whether the solvency analysis treated the obligation to return $75 million in unspent Marketing Funds, and millions more in misspent funds, as a liability of Yeezy, and whether it treated the attached funds as an asset of Yeezy.  Those questions are pertinent to whether an award may be rendered ineffectual in the absence of an attachment.

The attachment is also necessary in order to avoid interference with the conduct of the arbitration, and specifically the book and records audit being conducted at the order of the arbitrator.  Allowing the funds that are currently the subject of that audit to be dissipated would prolong and undermine the audit, and permit further breaches of the Agreement by enabling Yeezy to spend funds that currently belong to adidas.

III.    **The Order of Attachment Should Encompass All Accounts of Ye and Ye-Affiliated Entities at JPMorgan up to the Amount of $75 Million.**

In 2022, adidas provided $75 million in Marketing Funds, and there can be no serious dispute regarding Yeezy's obligation to return any unspent Marketing Funds to adidas now that the Agreement has been terminated.  Ex. 3, at 1–2; McIntire Decl. ¶ 14; Ex. 1, at 12, 19. Because Yeezy failed to respond to adidas's request for return of the unspent Marketing Funds and an audit of Yeezy spending of the Marketing Funds, it remains unknown how much of the Marketing Funds have been spent on valid ███████████████████████████████ ████████████████████████████████████████████████ and the

full extent to which those funds were misappropriated or misused by Yeezy, ██████████

████████████████████████████████████████████████████████

██████   McIntire Decl. ¶ 16.  Morones Decl. ¶¶ 5-10.  Attaching up to $75 million in Yeezy's

accounts maintained by the Garnishee will preserve the status quo, prevent the Garnishee from

closing those accounts, and allow the Parties complete the audit of the Yeezy accounts in the

context of the arbitration proceeding to resolve any dispute over adidas's entitlement to the

Marketing Funds.

## <u>CONCLUSION</u>

For all the reasons stated above, adidas respectfully requests that its renewed petition for

an order of attachment be granted.

Dated: May 29, 2023
       New York, NY

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: <u>/s/ Mark P. Goodman</u>

Mark P. Goodman (mpgoodman@debevoise.com)
William H. Taft V (whtaft@debevoise.com)
Floriane Lavaud (flavaud@debevoise.com)

66 Hudson Boulevard
New York, NY 10001
(212) 909-6000

*Counsel for Petitioner adidas AG*